1  Laurence D. King (SBN 206423)
   Mario M. Choi (SBN 243409)
2  KAPLAN FOX & KILSHEIMER LLP
   350 Sansome Street, Suite 400
3  San Francisco, CA 94104
   Telephone: 415-772-4700
4  Facsimile: 415-772-4707
   lking@kaplanfox.com
5  mchoi@kaplanfox.com

6  Joshua A. Millican (*pro hac vice*)
   LAW OFFICE OF JOSHUA A. MILLICAN, P.C.
7  The Grant Building, Suite 607
   44 Broad Street, N.W.
8  Atlanta, GA 30303
   Telephone:  404-522-1152
9  Facsimile:  404-522-1133
   joshua.millican@lawofficepc.com
10
   Counsel for Plaintiff and the Proposed Class
11
   [Additional Counsel listed on signature page]
12

13              **UNITED STATES DISTRICT COURT**

14             **NORTHERN DISTRICT OF CALIFORNIA**

15

16  FAYELYNN SAMS, on behalf of herself and      Case No. 5:10-CV-05897-JF
    all others similarly situated,
17                                               **DECLARATION OF JOSHUA A.**
                     Plaintiff,                  **MILLICAN IN SUPPORT OF**
18                                               **PLAINTIFF'S OPPOSITION TO**
            v.                                   **MOTION TO DISMISS BY**
19                                               **DEFENDANT YAHOO! INC.**
    YAHOO! INC.,
20                                               Date:        April 29, 2011
                     Defendant.                  Time:        9:00 a.m.
21                                               Courtroom:  3
                                                 Judge:       Hon. Jeremy Fogel
22

23

24

25          I, Joshua A. Millican, declare as follows:

26          1.      I am an attorney at the Law Office of Joshua A. Millican, and represent Fayelynn

27  Sams, the Plaintiff in this action.  I submit this Declaration in support of Plaintiff's Opposition to

28  the Motion to Dismiss by Yahoo! Inc.  ("Yahoo!" or "Defendant").

5:10-CV-05897-JF

DECL. OF JOSHUA A. MILLICAN ISO PLTF'S OPPOSITION TO MOTION TO DISMISS BY DEF. YAHOO! INC.

2.      Attached hereto as Exhibit A is a true and correct copy of a screenshot, dated April 5, 2011, entitled "Internet Archive Wayback Machine," http://web.archive.org/web/*/http://info.yahoo.com/legal/us/yahoo/utos/utos-173.html, from www.archive.org, concerning the website located at http://info.yahoo.com/legal/us/yahoo/utos/utos-173.html, which is Yahoo!'s Terms of Service.

3.      Attached hereto as Exhibit B is a true and correct copy of *In re Application of the U.S.A. for an Order Pursuant to 18 U.S.C. § 2703(d)*; Misc. No. 09-Y-080 CBS, Yahoo! Inc.'s Response to the U.S.'s Motion to Compel Compliance with This Court's 2703(d) Order, Ex. A, ¶ 13 (D. Colo. April 13, 2010).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 8, 2011 in Atlanta, Georgia.


                                        /s/ *Joshua A. Millican*
                                        Joshua A. Millican

# Exhibit A



Enter Web Address: | http:// | | All | ▾ | | | Adv. Search  Compare Archive Pages

Searched for **http://info.yahoo.com/legal/us/yahoo/utos/utos-173.html**                    **405** Results

**NEW!** A beta version of an updated Wayback Machine interface and index (with more recent results) is now in testing! You can try <http://info.yahoo.com/legal/us/yahoo/utos/utos-173.html> at the test site wackbackmachine.org for improved results. Note that availability and functionality of the beta will fluctuate during the test period.

\* denotes when site was updated.
Material typically becomes available here 6 months or more after collection, with some exceptions See FAQ.

## Archived Results from Jan 01, 1996 - latest

| 1996 | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 pages | 0 pages | 0 pages | 0 pages | 0 pages | 0 pages | 0 pages | 0 pages | 0 pages | 0 pages | 12 pages | 249 pages | 45 pages | 0 pages | 99 pages | 0 pages |

| 2006 | 2007 | 2008 | 2010 |
|---|---|---|---|
| Dec 13, 2006 * | Jan 01, 2007 * | Jan 09, 2008 * | Aug 10, 2010 * |
| Dec 14, 2006 * | Jan 02, 2007 * | Jan 15, 2008 * | Aug 10, 2010 * |
| Dec 14, 2006 * | Jan 02, 2007 * | Jan 23, 2008 * | Aug 10, 2010 * |
| Dec 16, 2006 * | Jan 03, 2007 * | Jan 24, 2008 * | Aug 11, 2010 * |
| Dec 16, 2006 * | Jan 04, 2007 * | Jan 25, 2008 * | Aug 11, 2010 * |
| Dec 17, 2006 * | Jan 05, 2007 * | Jan 30, 2008 * | Aug 11, 2010 * |
| Dec 18, 2006 * | Jan 06, 2007 * | Feb 06, 2008 * | Aug 12, 2010 * |
| Dec 20, 2006 * | Jan 06, 2007 * | Feb 12, 2008 * | Aug 12, 2010 * |
| Dec 21, 2006 * | Jan 07, 2007 * | Feb 13, 2008 * | Aug 12, 2010 * |
| Dec 25, 2006 * | Jan 08, 2007 * | Feb 20, 2008 * | Aug 12, 2010 * |
| Dec 28, 2006 * | Jan 09, 2007 * | Feb 28, 2008 * | Aug 13, 2010 * |
| Dec 31, 2006 * | Jan 10, 2007 * | Mar 06, 2008 * | Aug 13, 2010 * |
|  | Jan 10, 2007 * | Mar 11, 2008 * | Aug 14, 2010 * |
|  | Jan 11, 2007 * | Mar 12, 2008 * | Aug 14, 2010 * |
|  | Jan 12, 2007 * | Mar 20, 2008 * | Aug 15, 2010 * |
|  | Jan 13, 2007 * | Mar 26, 2008 * | Aug 15, 2010 * |
|  | Jan 14, 2007 * | Apr 03, 2008 * | Aug 16, 2010 * |
|  | Jan 14, 2007 * | Apr 05, 2008 * | Aug 16, 2010 * |
|  | Jan 16, 2007 * | Apr 09, 2008 * | Aug 17, 2010 * |
|  | Jan 17, 2007 * | Apr 10, 2008 * | Aug 17, 2010 * |
|  | Jan 18, 2007 * | Apr 12, 2008 * | Aug 18, 2010 * |
|  | Jan 19, 2007 * | Apr 17, 2008 * | Aug 18, 2010 * |
|  | Jan 20, 2007 * | Apr 22, 2008 * | Aug 19, 2010 * |
|  | Jan 23, 2007 * | Apr 24, 2008 * | Aug 19, 2010 * |
|  | Jan 24, 2007 * | Apr 30, 2008 * | Aug 20, 2010 * |
|  | Jan 24, 2007 * | May 05, 2008 * | Aug 20, 2010 * |
|  | Jan 25, 2007 * | May 07, 2008 * | Aug 20, 2010 * |
|  | Jan 27, 2007 * | May 08, 2008 * | Aug 21, 2010 * |
|  | Jan 28, 2007 * | May 13, 2008 * | Aug 21, 2010 * |
|  | Jan 29, 2007 * | May 13, 2008 * | Aug 22, 2010 * |
|  | Feb 06, 2007 * | May 14, 2008 * | Aug 22, 2010 * |
|  | Feb 07, 2007 * | May 15, 2008 * | Aug 22, 2010 * |
|  | Feb 09, 2007 * | May 15, 2008 * | Aug 23, 2010 * |
|  | Feb 10, 2007 * | May 17, 2008 * | Aug 23, 2010 * |
|  | Feb 10, 2007 * | May 21, 2008 * | Aug 23, 2010 * |
|  | Feb 11, 2007 * | May 26, 2008 * | Aug 23, 2010 * |
|  | Feb 13, 2007 * | Jun 10, 2008 * | Aug 24, 2010 * |
|  | Feb 14, 2007 * | Jun 11, 2008 * | Aug 24, 2010 * |
|  | Feb 16, 2007 * | Jun 12, 2008 * | Aug 24, 2010 * |
|  | Feb 16, 2007 * | Jun 19, 2008 * | Aug 25, 2010 * |
|  | Feb 17, 2007 * | Jun 26, 2008 * | Aug 25, 2010 * |
|  | Feb 18, 2007 * | Jul 03, 2008 * | Aug 25, 2010 * |
|  | Feb 20, 2007 * | Jul 09, 2008 * | Aug 26, 2010 * |
|  | Feb 21, 2007 * | Jul 10, 2008 * | Aug 26, 2010 * |
|  | Feb 23, 2007 * | Jul 17, 2008 * | Aug 26, 2010 * |
|  | Feb 23, 2007 * |  | Aug 27, 2010 * |

Feb 24, 2007
Feb 25, 2007 *
Feb 26, 2007 *
Feb 27, 2007 *
Feb 27, 2007 *
Feb 27, 2007 *
Feb 28, 2007 *
Mar 01, 2007 *
Mar 05, 2007 *
Mar 05, 2007 *
Mar 07, 2007 *
Mar 07, 2007 *
Mar 08, 2007 *
Mar 09, 2007 *
Mar 10, 2007 *
Mar 11, 2007 *
Mar 13, 2007 *
Mar 14, 2007 *
Mar 15, 2007 *
Mar 15, 2007 *
Mar 18, 2007 *
Mar 19, 2007 *
Mar 20, 2007 *
Mar 21, 2007 *
Mar 22, 2007 *
Mar 22, 2007 *
Mar 23, 2007 *
Mar 24, 2007 *
Mar 26, 2007 *
Mar 27, 2007 *
Mar 28, 2007 *
Mar 29, 2007 *
Mar 29, 2007 *
Mar 31, 2007 *
Mar 31, 2007 *
Mar 31, 2007 *
Apr 02, 2007 *
Apr 02, 2007 *
Apr 04, 2007 *
Apr 05, 2007 *
Apr 06, 2007 *
Apr 14, 2007 *
Apr 15, 2007 *
Apr 16, 2007 *
Apr 17, 2007 *
Apr 19, 2007 *
Apr 21, 2007 *
Apr 21, 2007 *
Apr 22, 2007 *
Apr 23, 2007 *
Apr 25, 2007 *
Apr 26, 2007 *
Apr 28, 2007 *
Apr 29, 2007 *
Apr 30, 2007 *
May 01, 2007 *
May 01, 2007 *
May 02, 2007 *
May 02, 2007 *
May 03, 2007 *
May 03, 2007 *
May 03, 2007 *
May 03, 2007 *
May 05, 2007 *
May 05, 2007 *
May 07, 2007 *

Aug 27, 2010 *
Aug 27, 2010 *
Aug 27, 2010 *
Aug 27, 2010 *
Aug 28, 2010 *
Aug 28, 2010 *
Aug 28, 2010 *
Aug 28, 2010 *
Aug 29, 2010 *
Aug 29, 2010 *
Aug 29, 2010 *
Aug 30, 2010 *
Aug 30, 2010 *
Aug 31, 2010 *
Sep 01, 2010 *
Sep 02, 2010 *
Sep 03, 2010 *
Sep 04, 2010 *
Sep 05, 2010 *
Sep 06, 2010 *
Sep 07, 2010 *
Sep 08, 2010 *
Sep 08, 2010 *
Sep 09, 2010 *
Sep 10, 2010 *
Sep 11, 2010 *
Sep 12, 2010 *
Sep 12, 2010 *
Sep 13, 2010 *
Sep 14, 2010 *
Sep 14, 2010 *
Sep 15, 2010 *
Sep 16, 2010 *
Sep 17, 2010 *
Sep 18, 2010 *
Sep 19, 2010 *
Sep 20, 2010 *
Sep 21, 2010 *
Sep 21, 2010 *
Sep 22, 2010 *
Sep 28, 2010 *
Sep 29, 2010 *
Oct 06, 2010 *
Oct 13, 2010 *
Oct 20, 2010 *
Oct 25, 2010 *
Nov 01, 2010 *
Nov 05, 2010 *
Nov 09, 2010 *
Nov 15, 2010 *
Nov 22, 2010 *
Nov 29, 2010 *
Dec 03, 2010 *

May 09, 2007 *
May 09, 2007 *
May 12, 2007 *
May 14, 2007 *
May 14, 2007 *
May 15, 2007 *
May 15, 2007 *
May 16, 2007 *
May 17, 2007 *
May 18, 2007 *
May 18, 2007 *
May 19, 2007 *
May 21, 2007 *
May 23, 2007 *
May 23, 2007 *
May 23, 2007 *
May 25, 2007 *
May 25, 2007 *
May 26, 2007 *
May 27, 2007 *
May 27, 2007 *
May 30, 2007 *
May 30, 2007 *
May 31, 2007 *
Jun 05, 2007 *
Jun 06, 2007 *
Jun 06, 2007 *
Jun 07, 2007 *
Jun 08, 2007 *
Jun 08, 2007 *
Jun 09, 2007 *
Jun 09, 2007 *
Jun 10, 2007 *
Jun 11, 2007 *
Jun 12, 2007 *
Jun 12, 2007 *
Jun 13, 2007 *
Jun 14, 2007 *
Jun 14, 2007 *
Jun 15, 2007 *
Jun 16, 2007 *
Jun 17, 2007 *
Jun 18, 2007 *
Jun 18, 2007 *
Jun 20, 2007 *
Jun 21, 2007 *
Jun 21, 2007 *
Jun 22, 2007 *
Jun 23, 2007 *
Jun 24, 2007 *
Jun 25, 2007 *
Jun 25, 2007 *
Jun 26, 2007 *
Jun 27, 2007 *
Jun 27, 2007 *
Jun 27, 2007 *
Jun 28, 2007 *
Jun 29, 2007 *
Jun 29, 2007 *
Jun 30, 2007 *
Jun 30, 2007 *
Jul 01, 2007 *
Jul 02, 2007 *
Jul 03, 2007 *
Jul 03, 2007 *
Jul 04, 2007 *

Jul 04, 2007 *
Jul 05, 2007 *
Jul 05, 2007 *
Jul 06, 2007 *
Jul 08, 2007 *
Jul 08, 2007 *
Jul 09, 2007 *
Jul 10, 2007 *
Jul 10, 2007 *
Jul 10, 2007 *
Jul 11, 2007 *
Jul 11, 2007 *
Jul 11, 2007 *
Jul 12, 2007 *
Jul 13, 2007 *
Jul 13, 2007 *
Jul 14, 2007 *
Jul 16, 2007 *
Jul 17, 2007 *
Jul 17, 2007 *
Jul 18, 2007 *
Jul 18, 2007 *
Jul 25, 2007 *
Aug 01, 2007 *
Aug 04, 2007 *
Aug 08, 2007 *
Aug 09, 2007 *
Aug 09, 2007 *
Aug 11, 2007 *
Aug 14, 2007 *
Aug 15, 2007 *
Aug 15, 2007 *
Aug 17, 2007 *
Aug 20, 2007 *
Aug 22, 2007 *
Aug 27, 2007 *
Aug 29, 2007 *
Sep 02, 2007 *
Sep 03, 2007 *
Sep 05, 2007 *
Sep 07, 2007 *
Sep 12, 2007 *
Sep 12, 2007 *
Sep 15, 2007 *
Sep 19, 2007 *
Sep 20, 2007 *
Sep 21, 2007 *
Sep 22, 2007 *
Sep 23, 2007 *
Sep 25, 2007 *
Sep 26, 2007 *
Sep 26, 2007 *
Sep 29, 2007 *
Oct 01, 2007 *
Oct 02, 2007 *
Oct 02, 2007 *
Oct 03, 2007 *
Oct 04, 2007 *
Oct 05, 2007 *
Oct 05, 2007 *
Oct 07, 2007 *
Oct 07, 2007 *
Oct 09, 2007 *
Oct 09, 2007 *
Oct 09, 2007 *
Oct 10, 2007 *

Oct 10, 2007 *
Oct 11, 2007 *
Oct 17, 2007 *
Nov 13, 2007 *
Dec 11, 2007 *

Home | Help

Internet Archive | Terms of Use | Privacy Policy

# Exhibit B



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

IN RE APPLICATION OF THE
UNITED STATES OF AMERICA FOR
AN ORDER PURSUANT TO
18 U.S.C. § 2703(d)

Misc. No. 09-Y-080 CBS

---

### YAHOO! INC.'S RESPONSE TO THE UNITED STATES' MOTION TO COMPEL COMPLIANCE WITH THIS COURT'S 2703(d) ORDER

---

The government's motion to compel in this case is an attempt to reverse seven years of established precedent requiring law enforcement to follow carefully proscribed rules when seeking to obtain email content from providers like Yahoo!. In trying to make a case for using § 2703(d) orders rather than search warrants to obtain emails that have been read by a user, the government seeks to reverse a bright-line, "age-based" rule – a standard that ISPs across the country have adopted as the guiding principle for how they respond to law enforcement requests for email content.

In its 2003 decision in *Theofel v. Farey-Jones*, 341 F.3d 978 (9th Cir. 2003), the Ninth Circuit found that all emails stored by an email provider are in "electronic storage" under the Stored Communications Act, 18 U.S.C. §§ 2701-2712 ("SCA"), and law enforcement must obtain a warrant to obtain emails stored with a provider for 180 days or less.

The government seeks to reverse this bright line "age-based" rule in favor of one based on whether the email has been read by the recipient, so that it can obtain such emails without a search warrant. At the core of this change is a misguided and often rejected theory that the

1

Congress created a statutory scheme for emails in storage less than 181 days that provides a high

level of protection against government intrusion for unopened emails (even if they are useless

spam) but a lower set of protections for emails after they have been read (even if the recipient

has merely glanced at them on a mobile device for later review) and then a higher set of

protections if the email resides on any backup created by the ISP. The Ninth Circuit has rejected

this notion at least twice. Instead, the Ninth Circuit has ruled that the SCA requires law

enforcement to procure a warrant to obtain emails no more than 180 days old, even if they have

been "opened." *Theofel v. Farey-Jones*, 359 F.3d 1066, 1075-77 (9th Cir. 2004). Despite that,

the government now attempts to force Yahoo! into an untenable position by having a court

outside the Ninth Circuit order Yahoo! to produce information stored within the Ninth Circuit

despite clear Circuit precedent to the contrary.[1]

The dispute in this case involves emails, stored in several Yahoo! email accounts, which

were sent or received within the 180-day period prior to when Yahoo! received a court order

requiring production of all emails in electronic storage for more than 180 days and all emails

"not in electronic storage." Yahoo! has produced relevant email over 180 days old, but has not

produced any other requested emails pursuant to *Theofel*, 359 F.3d at 1075-77.[2]

In its motion to compel production of this additional email, the government argues that

the moment a user reads a particular message, the contents of the message are no longer

---

[1] The ruling that the government seeks in this matter would force Yahoo! to either endure a contempt penalty in this court or become vulnerable to civil liability within the Ninth Circuit. This liability is by no means hypothetical – in *Quon v. Arch Wireless*, 529 F.3d 892 (9th Cir. 2008) *cert. graned sub nom., City of Ontario v. Quon*, 130 S.Ct. 1011, *cert denied sub nom., USA Mobility Wireless, Inc. v. Quon*, 130 S.Ct. 1011 (2009) the Court of Appeals for the Ninth Circuit held that an electronic communication service provider who turns over opened and stored text messages without a warrant or a viable exception is liable under the SCA as a matter of law.

[2] Yahoo!'s initial production of emails inadvertently omitted some emails that are not subject to this dispute and Yahoo! made a supplemental production of these emails to the government on March 24, 2010.

considered "in electronic storage," because the email is not in temporary, intermediate electronic storage, nor is it stored as "backup," because the definition of "backup" is limited to a backup made by a provider.  Under the government's theory, the moment a user reads an email, that email is somehow magically transformed from being covered by 18 U.S.C. § 2703(a) – under which law enforcement would need a warrant to get access – into the category of information covered under 18 U.S.C. § 2703(a) – under which law enforcement can get access with a mere subpoena (with prior notice) or a § 2703(d) Order.

This argument is both factually and legally wrong.  First, the SCA's definition of "electronic storage" includes any form of "backup" storage without any limitation on whether the "backup" is made by the ISP or the user.  18 U.S.C. § 2510(17).  Thus, for emails stored on Yahoo!'s server, the emails are covered by 18 U.S.C. § 2703(a) and the government must obtain a search warrant before it may compel disclosure all email stored for 180 days or less.  Second, the government's interpretation of "electronic storage," which excludes emails that have been marked as "read," would frustrate Congress' intent in passing the SCA.  If such emails are excluded from the definition of "electronic storage," they may not be covered by the SCA at all, because they do not fit within the category of materials described in § 2703(b)(2).  Third, regardless of SCA protection, users who store emails with Yahoo! have a reasonable expectation of privacy in their email, whether opened or not, and therefore the Fourth Amendment requires that the government obtain a warrant to access such material.

### PROCEDURAL BACKGROUND

On December 3, 2009, this Court granted the government's request for a § 2703(d) order for the production of certain records and content associated with three email accounts and any

3

other linked Yahoo! accounts. Specifically, the Court ordered Yahoo! to turn over the contents

of all emails in these accounts older than 180 days and all emails not "in electronic storage." In

footnote 1 to Appendix A of that Order, the phrase "not in electronic storage," was defined to

include any emails the account holders sent and any emails that the account holders had received

and opened. (Order Mar. 5, 2010, App'x. A at n.1). The government included this definition in

its request despite knowing that it contradicts governing Ninth Circuit case law as to the meaning

of the term "electronic storage."

The Government served the Order on Yahoo! and Yahoo! retrieved and produced certain

information on December 22, 2009 based on the definition of "electronic storage" set forth by

the Ninth Circuit in *Theofel*, 359 F.3d at 1075-77, which includes all email stored on Yahoo!'s

mail servers. Yahoo! also specifically informed the Government in writing of its legal position.

On March 4, 2010, the Government moved to compel compliance with the Order and this Court

granted the motion the next day. Subsequently, this Court stayed its Order and set a briefing

schedule to allow the parties to address the issue of the statutory and constitutional protection

that should be afforded to the unproduced email.

## FACTUAL BACKGROUND

Yahoo! provides email service known as "Yahoo! Mail" for millions of individual users.

(Hart Decl. ¶ 1, Apr. 12, 2010, attached as Exhibit A.) The majority use Yahoo!'s free email

service. Yahoo! also provides premium email service for approximately 1 million users. (*Id.* ¶

3.) Over 30 million free email users access their Yahoo! Mail through some type of mobile

device. (*Id.* ¶8.)

4

Yahoo!'s free email service is predominantly a web-based service whereby users send and receive email through a web interface. (*Id.* ¶ 4.) Users of Yahoo!'s free email service currently cannot configure an email client such as Microsoft Outlook or Outlook Express to interface with Yahoo!'s mail servers to download their email to their local computer. (*Id.*) Rather they must interface with Yahoo!'s email system through a browser – like Internet Explorer. When reviewing their email in this manner, a user's browser may store a temporary copy of viewed messages locally in a cache file. That cache is temporary and is often overwritten quickly, based upon the user's browser settings. Nevertheless, Yahoo! maintains all user mail (unless a user affirmatively chooses to delete it) on its mail servers, regardless of whether the mail has been previously accessed by the subscriber or locally cached in his or her browser, until a user chooses to delete it. (*Id.* ¶ 5.) The difference between what has been described as "opened" or "read" mail and "unopened" or "unread" mail is a simple digital value or "flag" that is part of the email file, which Yahoo! uses to determine whether the email should be displayed to the subscriber in bold font for unread messages or a plain text font for read messages. (*Id.* ¶ 6.) Other than this digital flag, nothing changes on Yahoo!'s servers when a user interacts with an email. (*Id.*)

Yahoo! users can manipulate the "opened" or "unopened" flag. (*Id.* ¶ 7.) Users who have opened an email message can click "Mark as unread," and continue to display the email in the "unopened" bolded format. (*Id.*) Similarly, users can change the flag to "read" in several ways without ever looking at the email. For example, the message will be marked as opened whenever a user clicks on a message (even accidentally), or takes any action on the message immediately before or after it in the inbox, regardless of whether the user has read the mail. (*Id.*)

5

Yahoo! cannot distinguish between email messages that a user has not yet opened and those

messages users have opened but "marked as unread." Similarly, Yahoo! cannot distinguish

between those messages a user has actually opened and those that are marked as read because of

some accidental, automatic, or incidental action taken on the message. (*Id.* ¶ 10.)

Yahoo! users can also access their mail through a wide variety of mobile devices,

including iPhones, as well as devices using the Android or WebOS operating systems and others.

(*Id.* ¶ 9.) A user's mail flags will generally be set to "read" whenever he or she views email

(even for a second) on their mobile device. (*Id.*) Users of mobile devices can either access their

messages through the same type of web browser they would use when sitting at their computers,

or through a "native email client," which may allow several days of email to be stored locally on

their device (depending on the user's settings), while another copy is maintained on the Yahoo!

Mail server. (*Id.* ¶ 9.) Some popular mobile devices in use in the United States – the iPhone,

and devices using the Android and WebOS operating systems – utilize such "native email

clients." (*Id.*) Yahoo Mail statistics show that overall, 60% of Yahoo! Mail that is accessed

through a mobile device is accessed through one of these native clients that stores a temporary

local copy and leaves a backup copy on the server. (*Id.*) The local or cached copies are

generally pushed off their devices to make room for new messages based on the settings on the

mobile device.[3] (*Id.*)

Yahoo! Mail is set by default to store copies of all outgoing email in a user's Sent Mail

folder. (*Id.* ¶ 12.) When email is stored in that folder, Yahoo! has no way of determining

---

[3] For example, the iPhone is configured as a default to store a number of recent messages, and can be changed to store up to 200 messages. Apple iPhone Users' Guide at 99, *available at* manuals.info.apple.com/en/iphone_user_guide.pdf (last visited Apr. 12, 2010).

whether the recipient of the email has opened the email. (*Id.*) Yahoo! Mail users sometimes use Sent Mail to ensure that they have a copy of the email available to them in case the mail is not deliverable as addressed. (*Id.*) Thus, before the email is delivered, Sent Mail functions as a backup for the user in case it needs to be resent or readdressed. (*Id.*) But, Yahoo! cannot distinguish between emails in the Sent mail folder have not yet been delivered or bounced back, and those messages that were received. (*Id.*) Accordingly, where Yahoo! is asked to produce email from a user's Sent Mail folder, it cannot determine whether the mail has yet been delivered. (*Id.*)

## ARGUMENT

### I.    Emails are Communications in Electronic Storage Regardless of Whether They Are Read or Unread.

The definition of "electronic storage" in the SCA covers emails, whether opened or unopened. *Theofel*, 359 F.3d at 1075-77. The SCA defines "electronic storage" as "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication...." 18 U.S.C. § 2510(17). Email communications meeting either of these conditions are provided with statutory protections under 18 U.S.C. § 2703, requiring law enforcement to obtain a warrant for their retrieval.

The government's motion to compel is premised on the theory that emails that have not yet been read by a user are covered by the first part of the definition of "electronic storage," 18 U.S.C. § 2510(17)(A), because the provider's storage of such emails is temporary and incident to its transmission. The government then argues that once emails are read, they are covered by

7

neither the first or second prong of the definition of electronic storage, because the provider is not providing "backup" storage. 18 U.S.C. § 2510(17)(B). From a functional point of view, the government is wrong on both of these points as applied to webmail providers like Yahoo!. First, webmail is stored permanently by the ISP on behalf of the user even before it is read, so it is never in "temporary" storage after delivery. Second, all storage by a webmail provider is covered by the second part of the definition.

**A.      A User's Act of Reading an Email is Irrelevant to Determination of whether Emails Are Protected by the Definition of "Electronic Storage."**

As to the "temporary, intermediate" prong of the "electronic storage" definition, emails that have been *delivered* (whether a user opens them or not) do not qualify because their storage is not temporary. As the government correctly notes, courts have previously held this part of the definition of electronic storage to apply only to "messages not yet delivered to their intended recipient." *Theofel*, 359 F.3d at 1075-1077; *Steve Jackson Games, Inc. v. U.S. Secret Service*, 36 F.3d 457, 461-62 (5th Cir. 1994); *In re Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 511-12 (S.D.N.Y. 2001) (§ 2701 only protects communications "stored 'for a limited time' in the 'middle' of transmission, i.e., when an electronic communication service temporarily stores a communication while waiting to deliver it.") But these cases generally describe email as it worked back in 1986, and not the way webmail works. In 1986, when Congress passed the SCA, the common way that users sent and received electronic mail was through a protocol whereby email would be stored temporarily on an ISP's system until the user connected to the ISP using an email client and downloaded the email from the ISP to his or her computer for permanent local storage. Based on the user's settings, a copy could either be left on the server after it was

8

downloaded or the server copy could be deleted.  But the user did not interact with the email on the provider's system – the user interacted only with the local copy.

According to the government, when this local storage occurs, any decision by the user to also leave the email on the provider's computer system transforms the nature of the provider's storage from "temporary, intermediate storage incident to transmission," into permanent storage. (Br. at 8).  But this structure does not apply to webmail because webmail is not delivered to the user so that the user can download it and store it locally on a permanent basis.  Rather, if webmail resides on a user's computer at all, it is in a temporary web-browsing cache.  The user only interacts with the mail while it is stored on the provider's servers.  Thus, for webmail providers, any "temporary" storage technically ends the instant Yahoo!'s mail servers place the email in the Yahoo! recipient's mailbox and not when the mail is read.  Even if the user *never* opens an email, it will continue to be stored in their Yahoo! Mail inbox forever—or at least while their account is active.[4]  With webmail, the provider's storage is thus never temporary and the act of "reading" the email is of no moment, because it does not transform the storage from "temporary" to permanent.

**B.      Email Actively Stored on Webmail Providers' Systems is Always in "Backup" Protection under the SCA.**

Although the plain meaning of the first prong of the definition of "electronic storage" may not cover webmail such as Yahoo! Mail, the plain meaning of the second prong of the definition of "electronic storage" protects all emails in a user's Yahoo! account.  This second

---

[4] This example shows the flaw in the example on page 7 of the government's brief.  Yahoo! will store emails for the recipient as long as an account is active even before the recipient has looked at it.  If the purpose of the storage is the same before or after the user reads the message, Yahoo! cannot be functioning as an ECS before the message is read and an RCS afterwards.  It is always serving the same function – storing email messages for its users.

prong extends the definition of electronic storage to include "any storage of *such* communication

by an electronic communication service for purposes of backup protection of such

communication...." 18 U.S.C. § 2510(17)(B) (emphasis added). When interpreting this

provision, a key question is whether the phrase "**such communication**" in the clause above

refers back to the broad phrase "a wire or electronic communication" in § 2510(17)(A), or only

to messages that were in electronic storage when the backup was made.

 The first district court to consider the meaning of "backup' under the SCA concluded that

it covered only those unopened messages an ISP backed-up in case of a system crash that had not

yet been delivered at the time of the backup. *Fraser v. Nationwide Mut. Ins. Co.,* 135 F. Supp.

2d 623, 635-36 (E.D. Pa. 2001) *aff'd in part, vacated in part*, 352 F.3d 107 (2004). In reaching

that decision, the court did not include in the meaning of "backup" any storage after the message

was "delivered." *Id.* The *Fraser* court's conception of backup is exceedingly narrow, however,

and the Ninth Circuit has squarely rejected it in two separate cases.

 In *Theofel*, the panel initially read the backup prong of the "electronic storage" definition

to include copies of private email messages retained on an ISP's server after delivery to the

recipient, explaining that:

> An obvious purpose for storing a message on an ISP's server after delivery is to
> provide a second copy of the message in the event that the user needs to download
> it again—if, for example, the message is accidentally erased from the user's own
> computer. The ISP copy of the message functions as a "backup" for the user.

359 F.3d at 1075. Unhappy with that ruling, the government intervened and moved the court to

reconsider so that it could raise the same argument it has raised here with regard to the meaning

of "backup." In response, the Ninth Circuit amended its opinion specifically to reject the

government's cramped conception of backup storage, because it would be redundant:

> It drains subsection (B) of independent content because virtually any backup of a subsection (A) message will itself qualify as a message in temporary, intermediate storage. The government counters that the statute requires only that the underlying message be temporary, not the backup. But the lifespan of a backup is necessarily tied to that of the underlying message. Where the underlying message has expired in the normal course, any copy is no longer performing any backup function. An ISP that kept permanent copies of temporary messages could not fairly be described as "backing up" those messages.

*Id.* at 1706; *see also Bailey v. Bailey*, No. 07-11672, 2008 WL 324156 at *6 (E.D. Mich. Feb. 6, 2008) (following *Theofel*); *Cardinal Health 414, Inc. v. Adams*, 582 F. Supp. 2d 967, 976 n.2 (M.D. Tenn. 2008) (same).

The Ninth Circuit reaffirmed this view in *Arch Wireless*,[5] in which it held that opened and archived text messages fell within the definition of electronic storage:

> By archiving the text messages on its server, Arch Wireless certainly was "storing" the messages. However, Congress contemplated this exact function could be performed by an ECS as well, stating that an ECS would provide (A) temporary storage incidental to the communication; and (B) storage for backup protection.

529 F.3d at 901. Under the *Theofel* court's reading, if the ISP is holding the message as a backup for the user – whether the user downloaded the message to his computer via Outlook, to a temporary native client on a mobile device, or even to a local web browser cache – then the copy remaining on the ISP shall be considered in electronic storage.[6] This is the only plausible interpretation of the definition that would fulfill ECPA's purpose: to protect the privacy of a form of communication that Congress deemed sufficiently similar to postal mail that it deserved

---

[5] Though *Arch Wireless* is currently on appeal to the Supreme Court, the Court granted certiorari only on the constitutional questions, not with regard to the Ninth Circuit's interpretation of the SCA. *See* 130 S.Ct. 1011 (2009).

[6] In *Arch Wireless*, the court recognized, however, that *who* the backups were for is not important: "Although it is not clear for whom Arch Wireless "archived" the text messages-presumably for the user or Arch Wireless itself-it is clear that the messages were archived for "backup protection," just as they were in *Theofel*." 529 F.3d at 902.

some statutory protection and for which "a warrant of some kind is required." H.R. Rep. 99-647 at 22 (1986).

Here, Yahoo!'s storage is within the "backup" prong of the "electronic storage" definition. As noted, users may retrieve Yahoo! email in a number of ways using a number of devices. For the 30 million mobile users, the temporary copy cached on their mobile device is ephemeral, and the copy Yahoo! stores is the backup that prevents the email from being lost when their mobile device downloads additional messages. Even for webmail users who are not using mobile, messages stored on Yahoo! servers are the "backup" copies as defined in the SCA, because any other copy of the message that the user views through a browser is only temporarily stored in the computer's browser cache. Without the Yahoo! backup, the message would be lost. *Theofel*, 359 F.3d at 1075-1077. Similarly, a user's Sent Mail serves as a backup copy in case the message is not delivered, or if the recipient deletes the message. The ability to backup mail and access it from a number of devices and computers, including mobile devices, is one of the chief advantages of webmail. It is one reason why webmail has come to dominate the non-business user email market and why email is headed further in the direction of remote accessibility.

The government relies on *United States v. Weaver*, 636 F. Supp. 2d 769, 772-73 (C.D. Ill. 2009) to support its argument that "backup" copies are limited to copies a provider makes to ensure system integrity. *Weaver*, as well as the other sealed cases cited, involved § 2703(d) orders served on Hotmail. But as the *Weaver* court itself recognized, neither the defendant nor Microsoft responded to the government's motion to compel, and thus these issues were not fully briefed. *Id.* at 770. The government provides no other support of its conclusion that *Theofel*'s

12

interpretation of the "backup" prong of § 2510(17) does not and should not apply to emails less than 181 days old, and as such the government's argument should be rejected.

### C. Under a Plain Meaning Analysis, If Opened Emails Are Not in Electronic Storage, The SCA May Not Protect Them at All.

The government claims that its interpretation of "electronic storage" does not frustrate the purpose of the SCA, because emails that have been read are covered elsewhere in the SCA and still entitled to some limited statutory protection. Specifically, the government asserts that such emails are protected by 18 U.S.C §2703(b), which applies to "wire or electronic communications in a remote computing service." While it is clear that Yahoo! functions as a Remote Computing Service ("RCS")[7] in a variety of ways, including by storing emails for users, the plain language of § 2703(b)(2) applies only to a *subset* of materials stored by an RCS and specifically covers only content sent to the RCS by the subscriber. To be covered by the provisions of § 2703(b)(2) invoked by the government, an email must qualify as a: "wire or electronic communication that is held or maintained on [an RCS]—

> (A) on behalf of, and received by means of electronic transmission *from* (or created by means of computer processing of communications received by means of electronic transmission *from*), *a subscriber or customer of such remote computing service*; and
>
> (B) solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

18 U.S.C. § 2703(a)(2)(A)-(B) (emphasis added).

---

[7] "[T]he term 'remote computing service' means the provision to the public of computer storage or processing services by means of an electronic communications system...." 18 U.S.C. § 2711.

The provisions of § 2703(b)(2) were meant to apply when "[a] subscriber or customer to a remote computing service transmits records to a third party, a service provider, for the purpose of computer processing." H.R. Rep. No. 99-647 at 23. Unlike the materials intended to be covered by this provision – materials which are uploaded by a user for storage and processing – opened and read emails are not received *from* the provider's subscriber or user. 18 U.S.C. § 2711(2).[8] Yahoo! receives the emails from a third party on a user's behalf, not from its own users.

To arrive at its convoluted reading of § 2703(b), the government relies on a legal fiction with no basis in fact: the idea that by not deleting the email after opening it, the user "sends" the email back to Yahoo!.[9] But with regard to webmail, no such transmission occurs. A user merely opens the email and takes no other action. No email is sent back to the provider. It thus flies in the face of the plain text of the statute for such emails to be protected by this definition. Accordingly, if the government's interpretation of "electronic storage" prevails, the SCA may not protect these emails at all. Such a result cannot stand in light of the legislative history and purpose of the SCA. On the other hand, as described above, the *Theofel* court's reading resolves the issue in a manner consistent with the statutory text, the realities of how email—particularly webmail—works, and as discussed below, the legislative history and purpose of the SCA.

---

[8] Yahoo!, however, remains an RCS because the requirement that a communication be received *from* a user is not present in the definition of an RCS. *See* 18 U.S.C. § 2711(2).

[9] The government will likely attempt to rely on the legislative history of ECPA, which includes the provision of the House Report which says that "Sometimes the addressee, having requested and received a message, chooses to leave it in storage on the service for re-access at a later time. The Committee intends that, in leaving the message in storage, the addressee should be considered the subscriber or user from whom the system received the communication for storage ...." H.R. Rep. No. 99-647 at 65. But not only is this inconsistent with the language used in the statute, it also does not apply to webmail, where the user did not "request and receive the message," but merely viewed it online in the storage provided by the ECS. In order to even consider the legislative history, the court would first have to find that the common word "*from*" as used in the SCA is ambiguous.

**D.     The Legislative History of the SCA Suggests that The Definition of Electronic Storage Includes Stored Webmail.**

To the extent that the statutory definition of "electronic storage" is unclear, the legislative history of the SCA supports Yahoo!'s reading.  In the SCA, the term "electronic storage" is used in two different places.  It is used in 18 U.S.C. § 2703(a) to set forth the rules for government access to communications, and it is also used in 18 U.S.C. § 2701(a), the provision of the SCA which makes it a crime for third parties to break into someone else's account and access communications in "electronic storage" in the system.  The use of the term "electronic storage" for purposes of this criminal provision is the same as used for § 2702(a).  With regard to the criminal provision in § 2701(a), the legislative history demonstrates that Congress intended that emails stored by a "remote computing service," would be considered communications in electronic storage if a hacker accessed them:

> An "electronic mail" service, which permits a sender to transmit a digital message to the service's facility, where it is held in storage until the addressee requests it, would be subject to Section 2701.  A "voice mail" service operates in much the same way, except that the stored message takes the form of the sender's voice, usually in digital code.  It would likewise be subject to Section 2701.  **Similarly, to the extent that a remote computing service is provided through an electronic communication service, then such service is also protected.**

H.R. Rep. No. 99-647, at 63 (emphasis added).  Thus, if a hacker broke into a Yahoo! account and accessed stored mail that had already been opened, Congress intended that the hacker could be prosecuted for violating 2701(a).  But Congress' intent could only be realized, and the criminal provisions of § 2701(a) could only apply, if the email was considered in "electronic storage," even though it was part of an RCS.  This passage provides conclusive evidence that Congress intended all stored emails to be considered in "electronic storage."

15

Without even bothering to cite or explain this portion of the legislative history, the Government skips over it to other language that appears later in the same report to argue that Congress intended that messages stored by a remote computing service would "continue to be covered by section § 2702(a)(2)" if left on the server after user access. H.R. Rep. No. 99-647 at 65 (1986). In so arguing, the government assumes that "continue" means that opened and read emails transition from being covered *exclusively* by Section 2702(a)(1) to being covered *exclusively* by Section 2702(a)(2) once a user "accesses" them.

The government made this same argument to the *Theofel* court, which rejected it.[10] Instead, the Ninth Circuit found that the quoted language more likely supported its interpretation that § 2702(a)(2) applies before and after access because the word "continue" suggests that the provisions of 18 U.S.C. § 2702(a)(2) applied even before the email was opened. As the *Theofel* court noted, "If section 2702(a)(2) applies to e-mail even before access," as the word "continue" suggests, "the committee could not have been identifying an exclusive source of protection, since even the government concedes that unopened e-mail is protected by the electronic storage provisions." *Id.*

The government's explanation of the legislative history does not comport with the plain language of the entire legislative record, because under its view, a court would have to read the

---

[10] The *Theofel* court also refused to reply on the government's citation to legislative history regarding a rejected 2000 amendment to the SCA, which the government also cites here, stating that "This sort of legislative history has very little probative value; Congress might have rejected the amendment precisely because it thought the definition already applied." 359 F.3d at 1077. The *Theofel* court also distinguished citation to the 2001 House report which the government also cites, finding that "The discussion addresses an unrelated issue and merely assumes that the definition only applies to unopened e-mail. This assumption was natural given that *Fraser* had recently been decided." *Id.* In any event, the legislative history on this point is, at best, unclear and sheds no real light on how electronic storage applies to webmail. Nor could it have considered such a situation, as webmail with nearly limitless storage protection did not exist at that time.

16

word "continue" as "would be protected instead by."[11] (Br. at 16 n. 7). Further, the government provides no explanation whatsoever for the more direct legislative history discussing the definition of "electronic storage," as used in 18 U.S.C. § 2701. Taking all of these things into account, the *Theofel* court's reading more accurately reflects the plain text of the House report—that email is still considered in "electronic storage," when it is maintained by an email provider.

**E.      Protecting All Emails Less Than 180 Days Old under the SCA is the Only Outcome Consistent with the Statutory Purpose.**

In applying the SCA, the Court must consider which interpretation of the backup prong is most consistent with the intent of Congress.[12] *Theofel* sets forth a bright line test whereby either prong (A) or prong (B) of the definition of electronic storage protects email until it has reached 181 days old. Such a test is consistent with Congress' intent to provide clear guidance as to the required legal process for all emails. The government's view, on the other hand, conditions the legal protection of private communications on potentially frivolous factors, such as the interface selected by the user to retrieve email, whether he or she accidentally clicked on a message, and whether the user knew of or used the "mark as read" option. Such counterintuitive reasoning would result in the application of a higher standard of protection to a group of unwanted and unopened spam mails that users never open or deleted than to any professional or personal emails that users save for safekeeping and later retrieval from Yahoo!'s servers.

---

[11] Continue is defined to mean "to maintain without interruption a condition, course, or action" or "to remain in existence." Miriam-Webster Online, http://www.merriam-webster.com/dictionary/continue/ (last visited Apr. 12, 2010).

[12] *Crandon v. United States*, 494 U.S. 152, 158 (1990) ("In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy."); *see also Andrews v. Riggs Nat'l Bank of Washington, D.C.*, 80 F.3d 906, 909 (4th Cir.1996) (recognizing that if statutory language is ambiguous, the court will "give it the meaning most consistent with the statute's purpose").

Congress enacted the SCA in 1986, as part of ECPA, at a time when use of the internet for person-to-person communications was in its nascent stage, and large-scale, third-party data storage and processing was an emerging business. *See* S. Rep. No. 99-541, at 5 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3559. The Act reflects Congress' judgment that users have a legitimate privacy interest in electronic communications stored on third-party servers. *Theofel*, 359 F.3d at 1072. The SCA's legislative history is imbued with the theme of balancing legitimate privacy interests against equally legitimate law enforcement needs.[13] The Senate Report accompanying the SCA also establishes that Congress was motivated to pass the Act, at least in part, by a belief that protecting the public's expectation of privacy in email communications was necessary to ensure the continued vitality of the Fourth Amendment in the face of evolving technology.

> Most importantly, the law must advance with the technology to ensure the continued vitality of the fourth amendment. Privacy cannot be left to depend solely on physical protection, or it will gradually erode as technology advances. Congress must act to protect the privacy of our citizens. If we do not, we will promote the gradual erosion of this precious right.

S. Rep. No. 99-541, at 5, *reprinted in* 1986 U.S.C.C.A.N. at 3559. The government's attempt to interpret the statute to vary the types of protections available to email users based on the specific technology they use to access and review emails is inconsistent with this purpose.

---

[13] *See, e.g.,* S. Rep. No. 99-541, at 3, *reprinted in* 1986 U.S.C.C.A.N. at 3557 ("[The SCA seeks] to protect privacy interests in personal and proprietary information, while protecting the Government's legitimate law enforcement needs."); *id.* at 5 *reprinted in* 1986 U.S.C.C.A.N. at 3559 ("[the SCA] represents a fair balance between the privacy expectations of American citizens and the legitimate needs of law enforcement agencies."); H. Rep. No. 106-932, at 7 (2000) ("[The SCA] balances the need for privacy and effective law enforcement in the digital age.").

## II.    Under the Fourth Amendment, the Government Must Obtain a Search Warrant Before Accessing Opened or Unopened Emails.

Regardless of the process required under the SCA to obtain the contents of emails, the government's attempts to obtain a person's private communications must also bear scrutiny under the Fourth Amendment.[14]  The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV.

### A.    Yahoo May Assert the Fourth Amendment Rights of Its Users.

To establish standing, a plaintiff must allege: (1) an injury that is (2) "fairly traceable to the defendant's allegedly unlawful conduct" and that is (3) "likely to be redressed by the requested relief." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Here, Yahoo! would suffer harm if forced to execute an unconstitutional order, which is fairly traceable to the government's motion to compel compliance with that order and will be redressed if this Court denies the government's motion. While courts have held that Fourth Amendment rights may not be vicariously asserted, that rule applies in the context of cases "considering the applicability of the exclusionary rule, a remedy used for Fourth Amendment violations in criminal cases." *Heartland Academy Cmty. Church v. Waddle*, 427 F.3d 525, 532 (8th Cir. 2005). Here, Yahoo! does not seek to exclude evidence, but instead seeks to be relieved from being forced to comply with an unconstitutional order. As such, Yahoo! may ask the Court to consider the Fourth Amendment rights of others in connection with remedying its own harm.[15]

---

[14] In this case, Yahoo! is not challenging whether application of the SCA's provisions regarding emails in electronic storage more than 180 days comports with the Fourth Amendment.

[15] Even if Yahoo! does not have standing to raise its users' Fourth Amendment rights, this Court should consider the arguments raised *sua sponte* as part of issuing a § 2703(d) order.

Even if the Court finds that Yahoo! is only asserting injury on behalf of its users, Yahoo! still has standing to challenge this order. In *In re Directives Pursuant to Section 105B of the Foreign Intelligence Surveillance Act*, 551 F. 3d 1004 (For. Intel. Surv. Ct. Rev. 2008), the Foreign Intelligence Surveillance Court of Review ("FISCR") confronted the question of whether a service provider had standing to challenge a surveillance order issued under FISA. As Yahoo! does here, the provider raised issues regarding the Fourth Amendment rights of its users. The FISCR found that while litigants cannot normally bring suit to vindicate the rights of third parties, that ground is only prudential and may be relaxed by Congressional action. *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see Bennett v. Spear*, 520 U.S. 154, 162 (1997) (recognizing that Congress can "modif[y] or abrogat[e]" prudential standing requirements). As the FISCR noted, "if Congress, either expressly or by fair implication, cedes to a party a right to bring suit based on the legal rights or interests of others, that party has standing to sue; provided, however, that constitutional standing requirements are satisfied." *In re Directives*, 551 F.3d at 1008 (citing *Warth*, 422 U.S. at 500-01). Like the provider who brought the challenge in *In re Directives*, in this case Yahoo!:

> easily exceeds the constitutional threshold for standing. It faces an injury in the nature of the burden that it must shoulder to facilitate the government's surveillances of its customers; that injury is obviously and indisputably caused by the government through the directives; and this court is capable of redressing the injury.

*Id.* Likewise, as courts have recognized in First Amendment cases regarding a user's ability to make anonymous comments in a public forum, internet service providers have standing to

protect their users' rights when a failure to do so would harm their ability to maintain and broaden the client base—as would be the case here if Yahoo! did not protect its users' rights.[16]

The question then becomes whether the prudential standing doctrine should apply to prevent Yahoo! from asking the court to consider the Fourth Amendment implications of the Order. To the extent that the court must weigh such considerations in issuing an order, the prudential standing doctrine should play no role whatsoever. Furthermore, that doctrine does not apply where Congress provided or expected that a third party could take action to enforce the rights of others. Here, as with FISA, § 2703(d) of the SCA demonstrates that expectation: "A court issuing an order pursuant to this section, on a motion made promptly by the service provider, may quash or modify such order, if the information or records requested are unusually voluminous in nature or compliance with such order otherwise would cause an undue burden on such provider." Requiring Yahoo! to produce emails less than 181 days old on a standard less than probable cause is itself burdensome. First, such an order would require Yahoo! to reverse seven years of practice and implement entirely new procedures for its compliance department, procedures which conflict with precedent in its home circuit. Second, requiring Yahoo! to implement one set of procedures for users who have accessed their mail via mobile device and one set for those who download their emails to their computers via POP access, and to try to distinguish between "read" and "unread" messages would pose an undue burden. (Hart Decl. ¶ 13). Third, Yahoo! would have to begin maintaining multiple sets of procedures based on where the district court issuing the subpoena or order was located. Fourth, Yahoo! faces the

---

[16] *See In re Verizon Internet Services, Inc.,* 257 F. Supp. 2d 244 (D.D.C. 2003), *rev'd on other grounds sub nom. by Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.,* 351 F.3d 1229 (D.C. Cir. 2003). (An internet service provider had a stake in vigorously protecting its subscribers' First Amendment rights, because a failure to do so could affect its ability to maintain and broaden its client base.)

potential burden of suit in the Ninth Circuit or face a contempt sanction in the Tenth Circuit. As such, these burdens allow Yahoo! to raise and defend its users' Fourth Amendment rights.

Moreover, if Yahoo! cannot raise these issues, then who can? As is the case here, the statute allows the government to obtain data with no prior notice to the subscriber; and consequently, only the provider is positioned to bring such challenge before the constitutional violation occurs. Further, a user whose information is not used against him or her will never have the opportunity to challenge the government's practice. Finally, private parties whose emails are obtained will be deemed to have no standing to enjoin future violations of the statute. *See Warshak v. United States*, 532 F.3d 521, 533 (6th Cir. 2009).

### B.    Users Have A Reasonable Expectation of Privacy in their Emails.

The protection of communications and recorded information against unreasonable search and seizure is central to the Fourth Amendment's protections and apparent from the Fourth Amendment's express protection of "papers." In *Katz v. United States*, 389 U.S. 347 (1967), the Court established a two-part test that governs whether the Fourth Amendment protects communications and therefore may not be the subject of government surveillance. 389 U.S. at 353. This test first asks whether the person the government's search has targeted has a subjective expectation of privacy. *Id.* and at 360 (Harlan, J. concurring). Second, the test asks whether society is prepared to recognize that expectation of privacy as being objectively reasonable. *See id.* at 367; *see also Smith v. Maryland*, 442 U.S. 735, 740 (1979).

Email satisfies the *Katz* two-part test. In the 40 years since the *Katz* decision, the types of private communications that once would have taken place over the telephone and through the U.S. mail now often occur through email. The daily use of these technologies over Yahoo!'s

22

network by millions of people is a testament to the public's belief that emails are private and secure. Moreover, judicial decisions regarding the nature of these communications, and Congress itself, have confirmed that the public's expectation of privacy in these communications is objectively reasonable. As a result, like the telephone call at issue in *Katz*, the Fourth Amendment protects these communications.

### 1.    Users of Emails Expect Their Email Communications to Be Private.

Email communications have become a ubiquitous part of American society. They dwarf the number of letters sent through the U.S. mail. Email communications cover every imaginable topic, including intimate love letters, private attorney-client communications, personal medical and financial information, and confidential business deals. The content of these emails is something that the user "seeks to preserve as private," and therefore "may be constitutionally protected." *Katz*, 389 U.S. at 351. Unsurprisingly, courts have found these subjective expectations of privacy to be objectively reasonable and have extended Fourth Amendment protection to email.[17] This protection also has been noted for Yahoo!'s email accounts specifically. *Wilson v. Moreau*, 440 F. Supp. 2d 81, 108 (D.R.I. 2006). Just as the public expects that the government will not review the contents of a letter sent in the U.S. Mail, or listen in to a telephone call, it also expects that the government will not intercept or review private emails. *United States v. Jacobsen*, 466 U.S. 109, 114 (1984) ("Letters and other sealed packages are in the general class of effects in which the public at large has a reasonable expectation of

---

[17] *United States v. Maxwell*, 45 M.J. 406, 419 (C.A.A.F. 1996) (military officer had an objectively reasonable expectation of privacy "in email transmissions made on the AOL service"); *United States v. Long*, 64 M.J. 57, 64-65 (C.A.A.F. 2006) (military officer had an objectively reasonable expectation of privacy in emails maintained in an account on an unclassified government computer system); *see also Davis v. Gracey*, 111 F.3d 1472, 1481 (10th Cir. 1997) (holding that police properly searched computer files covered by warrant, but indicating that an additional warrant would be necessary to justify searching emails that fell outside the scope of the warrant at issue); *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 563 (S.D.N.Y. 2008) (same).

privacy; warrantless searches of such effects are presumptively unreasonable."); *United States v. Chadwick*, 433 U.S. 1, 10 (1977).

In addition to the subjective expectations demonstrated by the vast use of email for personal communications, legal and technological protections offer users valid reasons for enhanced feeling of security beyond that offered by a plain white envelope. Indeed, for a third party to surreptitiously view a user's emails, he would not only have to violate several federal statutes protecting email or generally prohibiting the interception of electronic communications, but also hack into either the sender or the recipient's password-protected email account or use sophisticated technological measures to intercept the email while in transmission. Courts have specifically recognized that the protection for the content of email messages is quite different than for the less-protected header or addressing information accompanying such messages.[18] These greater protections for email content further enhance the public's subjective expectation of privacy in emails. As a result, government surveillance of email accounts is just as invasive as the eavesdropping found unconstitutional in *Katz*.

---

[18] For example, the Ninth Circuit held in *United States v. Forrester* that the Fourth Amendment protected the content of emails but not "e-mail to/from addresses and IP addresses," because "the [Supreme] Court in *Smith* and *Katz* drew a clear line between unprotected addressing information and protected content information." 512 F.3d 500, 503, 510 (9th Cir. 2008); *see also United States v. Beckett*, No. 09-10579, 2010 WL 776049, at *4 (11th Cir. Mar. 9, 2010) (holding that the defendant had no reasonable expectation of privacy in internet and call records, but distinguishing content); *United States v. Zavala*, 541 F.3d 562, 577 (5th Cir. 2008) (noting that a user had a reasonable expectation of privacy in emails stored on a cell phone); *United States v. Bowen*, No. S1 07 cr 961 (LBS) ___ F. Supp. 2d ___, 2010 WL 710829 at *7 n.3 (S.D.N.Y. Feb. 17, 2010) (applying the Fourth Amendment to email communications and noting that "The Fourth Amendment's applicability to e-mail communications has been assumed by several courts in this Circuit, and we have not been presented with sufficient reasons to depart from this understanding.") *see also United States v. Cioffi*, 668 F. Supp. 2d 385, 389 n.77 (E.D.N.Y. 2009) (government did not dispute that target had a reasonable expectation of privacy in the contents of his personal email account).

### 2.   Congress's Enactment of the SCA Provides Additional Support For a Belief That Email Communications Are Private.

Congress affirmed the legitimacy of the public's expectation of privacy in email communications when it enacted the SCA to create specific statutory protections for the privacy of emails. In addition to requiring the government to obtain a warrant before obtaining access to emails in electronic storage less than 180 days old, the SCA also made it a federal crime to obtain unauthorized access to email. *See* 18 U.S.C. §§ 2701(a)(1)-(2), 2703(a). Furthermore, the SCA flatly prohibited ISPs from disclosing the contents of emails to anyone other than the government, except under a handful of well-defined exceptions. 18 U.S.C. § 2702(a)(1).

By making it a federal crime to invade the privacy of email accounts, and by expressly requiring a warrant for any search of such accounts, Congress unequivocally established that the public's expectation of privacy in email, regardless of its stage in the process of transmission, delivery, and storage, is "one that society is prepared to recognize as 'reasonable.'" *Katz*, 389 U.S. at 361 (Harlan, J., concurring); *see also In re John Doe*, 680 N.W.2d 792, 806 (Wis. 2004) ("ECPA extended the privacy protections that have been given voice communications to electronic communications such as e-mail. ... This is a strong expression of society's expectation of privacy in electronic communications." (citation omitted)).

### 3.   The Stored Emails Are Protected from Access Using a Password, and As Such Users Retain a Reasonable Expectation of Privacy in Them.

Yahoo! users must protect access to their emails using a password, which prevents access to the account by anyone other than people the user authorizes. Courts have found that a user who has password protected his own files has a legitimate expectation of privacy in such files, even though the computer itself is in the possession or co-possession of a third party, or

connected to an local area network.[19]  *See United States v. Heckencamp*, 482 F.3d 1142, 1146

(9th Cir. 2007) ("[T]he act of attaching his computer to the [university] network did not

extinguish [defendants] legitimate, objectively reasonable privacy expectations.")  Indeed, courts

have decided that where one user has protected files with a password that the other user does not

know, the second user cannot consent to a search of the password protected files.  *United States*

*v. Buckner*, 473 F.3d 551, 554 (4th Cir. 2007); *Trulock v. Freeh*, 275 F.3d 391, 403 (4th Cir.

2001).  As one judge recognized,

> [F]or most people, their computers are their most private spaces.  People
> commonly talk about the bedroom as a very private space, yet when they
> have parties, all the guests --including perfect strangers--are invited to toss
> their coats on the bed.  But if one of those guests is caught exploring the
> host's computer, that will be his last invitation.

*United States v. Gourde*, 440 F.3d 1065, 1077 (9th Cir. 2006) (*en banc*) (Kleinfeld, J,

dissenting).  Put another way "[b]ecause intimate information is commonly stored on computers,

it seems natural that computers should fall into the same category as suitcases, footlockers, or

other personal items that 'command[] a high degree of privacy.'"  *United States v. Andrus*, 483

F.3d 711 (10th Cir. 2007) (quoting *United States v. Salinas-Cano*, 959 F.2d 861, 864 (10th Cir.

1992)); *see also Trulock*, 275 F.3d 391, 403 ("Trulock's password-protected files are analogous

to the locked footlocker inside the bedroom.")

Increasingly webmail users store their most private communications in their email

accounts and protect those accounts with a password designed to prevent others from obtaining

access.  The fact that the virtual "footlocker" that holds the password-protected emails resides on

---

[19] Typically, the defendants tend to lose motions even where the co-owner had no actual authority to consent to the search because the court finds that the co-owner had apparent authority, or that the government was not aware that the files were password protected.  Those factors have no bearing here where the only question is whether a legitimate expectation of privacy exists.

a computer not located in a user's home may *increase* rather than decrease the expectation of

privacy. For instance, a typical user may allow members of his or her family or guests to access

their computer for a number of reasons and certain documents stored on that computer, but are

not likely to allow those same family members or guests to access their own personal or business

email account. The fact that the emails are stored on a distant server and protected by a

password thus may well *heighten* rather than lessen the expectation of privacy.

### 4.     Yahoo!'s Terms of Service Supports a Finding that the Users Had a Reasonable Expectation of Privacy.

In conversations with the government, it indicated that it intends to make the same

argument in response to Yahoo!'s constitutional argument that it made in *Warshak*—that the

Yahoo! Terms of Service ("TOS") diminish user's legitimate expectation of privacy in

communications sent through Yahoo!'s network. The user in this case assented to the Yahoo!

TOS, which provides that Yahoo! can access a user's account only for a few narrowly

circumscribed and specifically identified reasons:

> You acknowledge, consent and agree that Yahoo! may access, preserve and
> disclose your account information and Content if required to do so by law or in a
> good faith belief that such access preservation or disclosure is reasonably
> necessary to: (i) comply with legal process; (ii) enforce the TOS; (iii) respond to
> claims that any Content violates the rights of third parties; (iv) respond to your
> requests for customer service; or (v) protect the rights, property or personal
> safety of Yahoo!, its users and the public.[20]

Any argument by the government that Yahoo!'s limited contractual right of access eliminates

Fourth Amendment protection for Yahoo! accounts is baseless for two reasons.

---

[20] *See Yahoo! Terms of Service*, § 6 attached as Ex. B (Terms of Service in effect at the time Yahoo! received this Court's order).

First, the cases finding a diminished right to privacy because of a contractual agreement involve employers (usually government employers) with a broad policy authorizing the employer to monitor the contents of any internet communication by an employee at any time for any reason.[21] Yahoo!'s limited right of access under the TOS bears no resemblance to an extensive monitoring program in the workplace setting. Instead, Yahoo!'s TOS, like that at issue in *Heckenkamp*, 482 F.2d at 1147, preserves a user's reasonable expectation of privacy in internet communications. The TOS at issue in *Heckenkamp* stated that:

> In general, all computer and electronic files should be free from access by any but the authorized users of those files. Exceptions to this basic principle shall be kept to a minimum and made only where essential to ... protect the integrity of the University and the rights and property of the state.

*Id.* at 1147. Yahoo!'s right of access under the TOS is circumscribed in almost the same way. The TOS permits Yahoo! to access content in subscribers' accounts when compelled by law or when necessary to protect the network by eliminating viruses, malicious software, or illegal content, such as child pornography. As a result, *Heckenkamp* demonstrates that employment cases like *Simons* are irrelevant to the issues before this Court and that Yahoo!'s TOS does not diminish the reasonable expectation of privacy of its subscribers.

Second, Yahoo!'s limited right to access its user's account does not mean that the Government shares in that right of access. Courts have repeatedly held that a citizen does not waive the protections of the Fourth Amendment merely by granting a third party limited access to protected areas or information. *United States v. Maxwell*, 45 M.J. 406, 418 (C.A.A.F. 1996)

---

[21] *See United States v. Simons* 206 F.3d 392, 398 (4th Cir. 2000) (citation omitted) (division of the CIA enforced a policy that it "would 'audit, inspect and/or monitor' employees' use of the Internet, including all file transfers, all websites visited, and all e-mail messages, 'as deemed appropriate.'")

("One always bears the risk that … an employee of the company will read e-mail against company policy.  However, this is not the same as the police commanding an individual to intercept the message.").  Courts have rejected the argument that terms of service that grant providers the right to screen emails for objectionable content or reserve the right to turn over emails to law enforcement diminish a user's reasonable expectation of privacy.  *Warshak v. United States*, No. 1:06-CV-357, 2006 WL 5230332 at *5 (S.D. Ohio July 21, 2006) (stating that the Court "is not persuaded-as an initial matter-that an individual surrenders his reasonable expectation of privacy in his personal emails once he allows those emails (or electronic copies thereof) to be stored on a subscriber account maintained on the server of a commercial ISP.") *rev'd on other grounds* 532 F.3d 521.

In this regard, the limited right of access granted to Yahoo! is analogous to situations where a landlord's right of entry to protect his rights and property and prevent the property from being used for illegal activity, or a hotel's right to enter a hotel room to clean it, does not undermine the privacy rights of a renter or a hotel guest.  The Supreme Court summarized this concept in 1964, when it ruled the search of a hotel room authorized by a hotel clerk was unconstitutional.

> [W]hen a person engages a hotel room he undoubtedly gives implied or express permission to such persons as maids, janitors or repairmen to enter his room in the performance of their duties.  But the conduct of the night clerk and the police in the present case was of an entirely different order. * * * No less than a tenant of a house, or the occupant of a room in a boarding house, a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures.  That protection would disappear if it were left to depend upon the unfettered discretion of an employee of the hotel.  It follows that this search without a warrant was unlawful.

29

*Stoner v. California*, 376 U.S. 483, 489 (1964) (internal citations and quotations omitted); *see also Chapman v. United States*, 365 U.S. 610, 616-618 (1961).

A landlord's rights to inspect an apartment unit to maintain the property, make repairs or provide agreed upon services do not diminish a renter's expectation of privacy in his or her home. *See United States v. Washington*, 573 F.3d 279, 284 (6th Cir. 2009) (noting that a landlord's authority to evict a tenant for violating the terms of the lease "cannot of itself deprive that person of an objectively reasonable expectation of privacy" in his apartment). Likewise, as the Supreme Court recognized in *Stoner*, a person does not forfeit his or her reasonable expectation of privacy in their home when they allow access to a maid. The same is true with Yahoo!'s limited right of access to subscriber's accounts — it is in no way a justification for finding a diminished expectation of privacy.

### C.      A Warrant Is Required to Access Users' Emails.

The Fourth Amendment requires the government to obtain a warrant based on probable cause before it searches homes, letters, or packages. *See Ex Parte Jackson*, 96 U.S. 727, 733 (1877). A 2703(d) order lacks the same protections as a warrant, and thus does not meet the Fourth Amendment's warrant requirement. The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A 2703(d) order, on the other hand does not require probable cause, or that the items sought be described with particularity, but instead only "reasonable ground to believe" that the records sought are "relevant and material to an ongoing investigation." This is necessarily a lesser

30

standard than a warrant—otherwise § 2703(a), which requires a warrant to retrieve

communications in electronic storage for less than 180 days, would be superfluous.[22]

Furthermore, just as an overbroad warrant violates the Fourth Amendment, it follows that

an overbroad 2703(d) order would be even more problematic. The order requests "all email" in

the target accounts, but does not provide any method for complying with the procedures set forth

in *United States v. Tamura*, 694 F.2d 591 (9th Cir. 1982), which are designed to limit fishing

expeditions in the context of search warrants. In *Tamura*, and then again in *United States v.*

*Comprehensive Drug Testing, Inc.*, 579 F.3d 989 (9th Cir. 2009), the Ninth Circuit held that the

"wholesale seizure of [] documents" and then later segregation of relevant documents violated

the Fourth Amendment even when authorized by a warrant. *Comprehensive Drug Testing*, 579

F.3d at 996, 998; *Tamura*, 694 F.2d at 596-97; *see also United States v. Foster*, 100 F.3d 846

(10th Cir. 1996) (suppressing evidence when officers used warrant to conduct a "general search"

while possessing a limited warrant). Here, the government is using the SCA toward the same

"general search" end—collecting the entire contents of an email account using a 2703(d) order,

without any limitation on how it will segregate the emails relevant to the basis for the order from

those that are not.

As such, the Fourth Amendment's warrant requirement applies to email, and requires that

the government obtain a warrant before accessing email less than 181 days old.

---

[22] *See also United States v. Hart*, No. 08-109-C, 2009 WL 2552347 at *22 n.90 (W.D. Ky. August 17, 2009) (noting that 2703(d) imposes "a lesser standard than the showing of probable cause necessary to obtain a warrant."); *In re Application of the Untied States of America for an Order Authorizing (1) Installation and Use of a Pen Register and Trap and Trace Device or Process, (2) Access to Customer Records, and (3) Cell Phone Tracking*, 441 F. Supp. 2d 816, 829 (S.D. Tex. 2006) (noting that a 2703(d) order is a "lesser" form of process than a warrant).

## III.   Conclusion

For the foregoing reasons, Yahoo! requests that this court vacate its March 5, 2010 order, and deny the Government's motion to compel compliance with its December 3, 2009 order.

Respectfully submitted this 13th day of April, 2010

Fredric M. Winocur
Marci A. Gilligan
Ridley, McGreevy, Winocur & Weisz, P.C.
303 16th Street, Suite 200
Denver, CO 80202
(303) 629-9700
Fax: (303) 629-9702
winocur@rmwpc.com

Marc J. Zwillinger
Zwillinger Genetski LLP
1705 N St N.W.
Washington, D.C. 20036
(202) 296-3585
marc@zwillgen.com

*Attorneys for Yahoo! Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of April, 2010, a copy of the foregoing **YAHOO! INC.'S RESPONSE TO THE UNITED STATES' MOTION TO COMPEL COMPLIANCE WITH THIS COURT'S 2703(d) ORDER** was hand-filed with the Clerk of Court and a copy was hand-delivered, addressed to the following:

Pegeen Rhyne, Esq.
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado  80202


Martha A. Hammond
Legal Assistant to Fredric M. Winocur

33

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

IN RE APPLICATION OF THE    )    Misc. No. 09-Y-080-CBS
UNITED STATES OF AMERICA  )
FOR AN ORDER PURSUANT   )    DECLARATION OF TRACY HART
TO 18 U.S.C. § 2703(d)       )
                          )
                          )
                          )

## DECLARATION OF TRACY HART

I, Tracy Hart, under penalty of perjury, hereby declare and say:

1. I am employed by Yahoo!, Inc. ("Yahoo!") as an Assistant Project Manager and Compliance Assistant for the Compliance Department, and I have worked for Yahoo! in that capacity since 2002. I have personally testified on Yahoo!'s behalf in many cases in state and federal court. I have personal knowledge of all the facts set forth in this declaration, except for where stated on information and belief. As to such facts, I believe them to be true.

2. As Assistant Project Manager and Compliance Assistant, my current job responsibilities include serving as a liaison between the Compliance team and product teams, working to develop and enhance compliance tools that Yahoo! uses to respond to legal process, and authenticating documents produced by Yahoo! as its custodian of records.

3. Yahoo! provides email service for hundreds of millions of individual users. Yahoo!'s email service is known as "Yahoo! Mail." The overwhelming majority of these individual users use free email accounts. Yahoo! also provides premium email service for a fee to more than a million users.

4. Yahoo!'s free email service is a web-based service whereby users send and receive email through a web interface. United States-based users of Yahoo!'s free email cannot configure

an email client such as Microsoft outlook or outlook express ("email clients") to interface with Yahoo!'s mail servers to download their email to their local computer. Users of Yahoo!'s premium email service can "pop" their email to various types of local email clients.

5.   Yahoo! maintains all user mail (unless the user affirmatively chooses to delete it) on its servers, regardless of whether the user has accessed the mail or stored it locally (including storage in a browser cache).

6.   For all users, the difference between what has been described as "opened" or "read" mail and "unopened" or "unread" mail is a simple digital value or "flag" that is part of the mail, which Yahoo! uses to determine whether the email should be displayed to the subscriber in "unread" or "read" format. If the flag is set to "unread" Yahoo! displays the header information of the mail to a user in their Yahoo! incoming mailbox in a bold font. If it is set to "read" it displays the header information of email to the subscriber in a plain text font.

7.   Yahoo! users can manipulate the "read" or "unread" flag as they choose. Users who have read an email message can click "Mark as unread," and continue to display the email in unread form. Similarly, users can change the flag to "read," without ever looking at the email. In fact, if a user clicks on an email the digital flag is immediately changed to read, even if the user never looks at the mail. Also, if a user deletes a previous message, the next message in the inbox will automatically be opened for a brief second unless the user has changed his or her Mail settings.

8.   Yahoo! users can also access their Yahoo! mail through a wide variety of mobile devices, including iPhones, Droids, Palm Devices, and others. When users use mobile devices to access their web-based email, their mail flags will generally be set to "read," whenever the user views email on their mobile device, but it will not typically be removed from Yahoo!'s email servers.

9.  Mobile device users can access their emails in a number of ways. They can access them using a mobile web interface, just as they would using an internet browser on their desktop or laptop computer. They may also use a "native client," which stores a limited number of emails (depending on a user's preference) locally on the mobile device, while Yahoo! continues to maintain a copy on its servers. The copies on the mobile device are generally aged out and replaced by newer messages as devices receive new messages in order to avoid using too much space on a mobile device. Some of the popular mobile devices in the United States – the iPhone, as well as some devices using the Android or WebOS operating systems—use native email clients. Over 60% of Yahoo! Mail accessed using a mobile device is accessed using such a native client.

10. Yahoo! cannot distinguish between email messages that have not yet been read by a user and those messages that have been read but have been "marked as unread." All such messages will appear to be "unread."

11. Similarly, Yahoo! cannot distinguish between those messages that have actually been read by a user and those that have had their mail flag set to "read" without ever having been read by the user.

12. Yahoo! Mail is set by default to store copies of all outgoing or "Sent Mail" in a user's sent mail folder. When email is stored in the "Sent Mail" folder, Yahoo! has no way of determining whether the recipient of the email has opened or reviewed the email. Yahoo! Mail users often store sent mail to ensure that they have a copy of the email available to them in case the mail is not deliverer or deliverable as addressed. Thus, before the email is delivered, it functions as a backup for the user in case it needs to be resent or readdressed. But, Yahoo! cannot distinguish between those outgoing emails have not yet been delivered or have bounced back as undeliverable, and those messages that no longer serve that function

and are being stored until the user deletes them despite the fact that may have been received. Thus, where Yahoo! is being asked to produce email from a user's Sent Mail folder, it can only make a distinction based on the age of the message (*i.e*, over 180 days old) and not on whether the mail has been delivered or opened by the recipient.

13. As a Custodian of Records in Yahoo!'s compliance department, I am aware that Yahoo! receives approximately 30,000 forms of legal process per year, including subpoenas, court orders, and search warrants. In order to properly process these legal requests in the turnaround time required by law enforcement, Yahoo! needs to be able to train its compliance personnel with clear, bright-line rules that can be administered by non-lawyers. In that regard, the bright-line rules set down by Theofel, whereby all email that is less than 180 days old cannot be produced to law enforcement in the absence of a search warrant has proven easy to implement and has effectively streamlined the process of reviewing and processing law enforcement requests.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _12_ day of April 2010:

_Tracy Hart_
Tracy Hart

# EXHIBIT B

New User? Sign Up   Sign In   Help          Preview Mail w/ Toolbar          Yahoo!      Mail

# YAHOO!₀ TERMS                    | Search |                          | Web Search |

**Yahoo! Terms of Service**

Yahoo! Info Center > Yahoo! Terms Center > Yahoo! Terms of Service

                                                                        Email      Print

## Yahoo! Terms of Service

### 1.  ACCEPTANCE OF TERMS

Yahoo! Inc. ("Yahoo!") welcomes you. Yahoo! provides the Yahoo! Services (defined below) to you subject to the following Terms of Service ("TOS"), which may be updated by us from time to time without notice to you. You can review the most current version of the TOS at any time at: http://info.yahoo.com/legal/us/yahoo/utos/utos-173.html. By accessing and using the Yahoo! Services, you accept and agree to be bound by the terms and provision of the TOS. In addition, when using particular Yahoo! owned or operated services, you and Yahoo! shall be subject to any posted guidelines or rules applicable to such services, which may be posted and modified from time to time. All such guidelines or rules (including but not limited to our Spam Policy) are hereby incorporated by reference into the TOS. Yahoo! may also offer other services that are governed by different Terms of Service. For instance, different terms apply to homesteaders on Yahoo! GeoCities or members of AT&T Yahoo! Dial or AT&T Yahoo! High Speed.

### 2.  DESCRIPTION OF YAHOO! SERVICES

Yahoo! provides users with access to a rich collection of resources, including without limitation various communications tools, forums, shopping services, search services, personalized content and branded programming through its network of properties which may be accessed through any various medium or device now known or hereafter developed (the "Yahoo! Services"). You also understand and agree that the Yahoo! Services may include advertisements and that these advertisements are necessary for Yahoo! to provide the Yahoo! Services. You also understand and agree that the Yahoo! Services may include certain communications from Yahoo!, such as service announcements, administrative messages and the Yahoo! Newsletter, and that these communications are considered part of Yahoo! membership and you will not be able to opt out of receiving them. Unless explicitly stated otherwise, any new features that augment or enhance the current Yahoo! Services, including the release of new Yahoo! properties, shall be subject to the TOS. You understand and agree that the Yahoo! Services is provided "AS-IS" and that Yahoo! assumes no responsibility for the timeliness, deletion, mis-delivery or failure to store any user communications or personalization settings. You are responsible for obtaining access to the Yahoo! Services, and that access may involve third-party fees (such as Internet service provider or airtime charges). You are responsible for those fees, including those fees associated with the display or delivery of advertisements. In addition, you must provide and are responsible for all equipment necessary to access the Yahoo! Services.

You understand that the technical processing and transmission of the Yahoo! Services, including your Content, may involve (a) transmissions over various networks; and (b) changes to conform and adapt to technical requirements of connecting networks or devices.

Please be aware that Yahoo! has created certain areas on the Yahoo! Services that contain adult or mature content. You must be at least 18 years of age to access and view such areas.

### 3.  YOUR REGISTRATION OBLIGATIONS

In consideration of your use of the Yahoo! Services, you represent that you are of legal age to form a binding contract and are not a person barred from receiving the Yahoo! Services under the laws of the United States or other applicable jurisdiction. You also agree to: (a) provide true, accurate, current and complete information about yourself as prompted by the Yahoo! Service's registration form (the "Registration Data") and (b) maintain and promptly update the Registration

Data to keep it true, accurate, current and complete. If you provide any information that is untrue, inaccurate, not current or incomplete, or Yahoo! has reasonable grounds to suspect that such information is untrue, inaccurate, not current or incomplete, Yahoo! has the right to suspend or terminate your account and refuse any and all current or future use of the Yahoo! Services (or any portion thereof). Yahoo! is concerned about the safety and privacy of all its users, particularly children. For this reason, parents of children under the age of 13 who wish to allow their children access to the Yahoo! Services must create a Yahoo! Family Account. When you create a Yahoo! Family Account and add your child to the account, you certify that you are at least 18 years old and that you are the legal guardian of the child/children listed on the Yahoo! Family Account. By adding a child to your Yahoo! Family Account, you also give your child permission to access many areas of the Yahoo! Services, including, email, message boards and instant messaging (among others). Please remember that the Yahoo! Services is designed to appeal to a broad audience. Accordingly, as the legal guardian, it is your responsibility to determine whether any of the Yahoo! Services areas and/or Content (as defined in Section 6 below) are appropriate for your child.

4.   YAHOO! PRIVACY POLICY

Registration Data and certain other information about you are subject to our applicable privacy policy. For more information, see the full Yahoo! Privacy Policy at http://info.yahoo.com/privacy/us/yahoo/, or if you came from Yahoo! Kids, then see our Yahoo! Kids Privacy Policy at http://info.yahoo.com/privacy/us/yahoo/kids. You understand that through your use of the Yahoo! Services you consent to the collection and use (as set forth in the applicable privacy policy) of this information, including the transfer of this information to the United States and/or other countries for storage, processing and use by Yahoo! and its affiliates.

5.   MEMBER ACCOUNT, PASSWORD AND SECURITY

You will receive a password and account designation upon completing the Yahoo! Service's registration process. You are responsible for maintaining the confidentiality of the password and account and are fully responsible for all activities that occur under your password or account. You agree to (a) immediately notify Yahoo! of any unauthorized use of your password or account or any other breach of security, and (b) ensure that you exit from your account at the end of each session. Yahoo! cannot and will not be liable for any loss or damage arising from your failure to comply with this Section 5.

6.   MEMBER CONDUCT

You understand that all information, data, text, software, music, sound, photographs, graphics, video, messages, tags, or other materials ("Content"), whether publicly posted or privately transmitted, are the sole responsibility of the person from whom such Content originated. This means that you, and not Yahoo!, are entirely responsible for all Content that you upload, post, email, transmit or otherwise make available via the Yahoo! Services. Yahoo! does not control the Content posted via the Yahoo! Services and, as such, does not guarantee the accuracy, integrity or quality of such Content. You understand that by using the Yahoo! Services, you may be exposed to Content that is offensive, indecent or objectionable. Under no circumstances will Yahoo! be liable in any way for any Content, including, but not limited to, any errors or omissions in any Content, or any loss or damage of any kind incurred as a result of the use of any Content posted, emailed, transmitted or otherwise made available via the Yahoo! Services.

You agree to not use the Yahoo! Services to:

a.   upload, post, email, transmit or otherwise make available any Content that is unlawful, harmful, threatening, abusive, harassing, tortious, defamatory, vulgar, obscene, libelous, invasive of another's privacy, hateful, or racially, ethnically or otherwise objectionable;

b.   harm minors in any way;

c.   impersonate any person or entity, including, but not limited to, a Yahoo! official, forum leader, guide or host, or falsely state or otherwise misrepresent your affiliation with a person or entity;

    d.  forge headers or otherwise manipulate identifiers in order to disguise the origin of any Content transmitted through the Yahoo! Service;

    e.  upload, post, email, transmit or otherwise make available any Content that you do not have a right to make available under any law or under contractual or fiduciary relationships (such as inside information, proprietary and confidential information learned or disclosed as part of employment relationships or under nondisclosure agreements);

    f.  upload, post, email, transmit or otherwise make available any Content that infringes any patent, trademark, trade secret, copyright or other proprietary rights ("Rights") of any party;

    g.  upload, post, email, transmit or otherwise make available any unsolicited or unauthorized advertising, promotional materials, "junk mail," "spam," "chain letters," "pyramid schemes," or any other form of solicitation, except in those areas (such as shopping) that are designated for such purpose (please read our complete Spam Policy);

    h.  upload, post, email, transmit or otherwise make available any material that contains software viruses or any other computer code, files or programs designed to interrupt, destroy or limit the functionality of any computer software or hardware or telecommunications equipment;

    i.  disrupt the normal flow of dialogue, cause a screen to "scroll" faster than other users of the Yahoo! Services are able to type, or otherwise act in a manner that negatively affects other users' ability to engage in real time exchanges;

    j.  interfere with or disrupt the Yahoo! Services or servers or networks connected to the Yahoo! Services, or disobey any requirements, procedures, policies or regulations of networks connected to the Yahoo! Services, including using any device, software or routine to bypass our robot exclusion headers;

    k.  intentionally or unintentionally violate any applicable local, state, national or international law, including, but not limited to, regulations promulgated by the U.S. Securities and Exchange Commission, any rules of any national or other securities exchange, including, without limitation, the New York Stock Exchange, the American Stock Exchange or the NASDAQ, and any regulations having the force of law;

    l.  provide material support or resources (or to conceal or disguise the nature, location, source, or ownership of material support or resources) to any organization(s) designated by the United States government as a foreign terrorist organization pursuant to section 219 of the Immigration and Nationality Act;

    m.  "stalk" or otherwise harass another; and/or

    n.  collect or store personal data about other users in connection with the prohibited conduct and activities set forth in paragraphs a through m above.

You acknowledge that Yahoo! may or may not pre-screen Content, but that Yahoo! and its designees shall have the right (but not the obligation) in their sole discretion to pre-screen, refuse, or remove any Content that is available via the Yahoo! Services. Without limiting the foregoing, Yahoo! and its designees shall have the right to remove any Content that violates the TOS or is otherwise objectionable. You agree that you must evaluate, and bear all risks associated with, the use of any Content, including any reliance on the accuracy, completeness, or usefulness of such Content. In this regard, you acknowledge that you may not rely on any Content created by Yahoo! or submitted to Yahoo!, including without limitation information in Yahoo! Message Boards and in all other parts of the Yahoo! Services.

You acknowledge, consent and agree that Yahoo! may access, preserve and disclose your account information and Content if required to do so by law or in a good faith belief that such access preservation or disclosure is reasonably necessary to: (i) comply with legal process; (ii) enforce the TOS; (iii) respond to claims that any Content violates the rights of third parties; (iv) respond to your requests for customer service; or (v) protect the rights, property or personal

safety of Yahoo!, its users and the public.

You understand that the Yahoo! Services and software embodied within the Yahoo! Services may include security components that permit digital materials to be protected, and that use of these materials is subject to usage rules set by Yahoo! and/or content providers who provide content to the Yahoo! Services. You may not attempt to override or circumvent any of the usage rules embedded into the Yahoo! Services. Any unauthorized reproduction, publication, further distribution or public exhibition of the materials provided on the Yahoo! Services, in whole or in part, is strictly prohibited.

7.  INTERSTATE NATURE OF COMMUNICATIONS ON YAHOO! NETWORK

When you register with Yahoo!, you acknowledge that in using the Yahoo! Services to send electronic communications (including but not limited to email, search queries, sending messages to Yahoo! Chat or Yahoo! Groups, uploading photos and files to Flickr, and other Internet activities), you will be causing communications to be sent through Yahoo!'s computer networks, portions of which are located in California, Texas, Virginia, and other locations in the United States and portions of which are located abroad. As a result, and also as a result of Yahoo!'s network architecture and business practices and the nature of electronic communications, even communications that seem to be intrastate in nature can result in the transmission of interstate communications regardless of where you are physically located at the time of transmission. Accordingly, by agreeing to this TOS, you acknowledge that use of the service results in interstate data transmissions.

8.  SPECIAL ADMONITIONS FOR INTERNATIONAL USE AND EXPORT AND IMPORT COMPLIANCE

Recognizing the global nature of the Internet, you agree to comply with all local rules regarding online conduct and acceptable Content. Use of the Yahoo! Services and transfer, posting and uploading of software, technology, and other technical data via the Yahoo! Services may be subject to the export and import laws of the United States and other countries. You agree to comply with all applicable export and import laws and regulations. In particular, you: (a) represent that you are not a party identified on any government export exclusion list, including but not limited to the U.S. Denied Persons, Entity, and Specially Designated Nationals Lists, nor will you transfer software, technology, and other technical data via the Yahoo! Services to parties identified on such lists; (b) agree not to use the Yahoo! Services for military, nuclear, missile, chemical or biological weaponry end uses in violation of U.S. export laws; (c) agree not to transfer, upload, or post via the Yahoo! Services any software, technology or other technical data in violation of U.S. or other applicable export or import laws.

9.  CONTENT SUBMITTED OR MADE AVAILABLE FOR INCLUSION ON THE YAHOO! SERVICES

Yahoo! does not claim ownership of Content you submit or make available for inclusion on the Yahoo! Services. However, with respect to Content you submit or make available for inclusion on publicly accessible areas of the Yahoo! Services, you grant Yahoo! the following worldwide, royalty-free and non-exclusive license(s), as applicable:

a.  With respect to Content you submit or make available for inclusion on publicly accessible areas of Yahoo! Groups, the license to use, distribute, reproduce, modify, adapt, publicly perform and publicly display such Content on the Yahoo! Services solely for the purposes of providing and promoting the specific Yahoo! Group to which such Content was submitted or made available. This license exists only for as long as you elect to continue to include such Content on the Yahoo! Services and will terminate at the time you remove or Yahoo! removes such Content from the Yahoo! Services.

b.  With respect to photos, graphics, audio or video you submit or make available for inclusion on publicly accessible areas of the Yahoo! Services other than Yahoo! Groups, the license to use, distribute, reproduce, modify, adapt, publicly perform and publicly display such Content on the Yahoo! Services solely for the purpose for which such Content was submitted or made available. This license exists only for as long as you elect to continue to include such Content on the Yahoo! Services and will terminate at the time

you remove or Yahoo! removes such Content from the Yahoo! Services.

   c.  With respect to Content other than photos, graphics, audio or video you submit or make available for inclusion on publicly accessible areas of the Yahoo! Services other than Yahoo! Groups, the perpetual, irrevocable and fully sublicensable license to use, distribute, reproduce, modify, adapt, publish, translate, publicly perform and publicly display such Content (in whole or in part) and to incorporate such Content into other works in any format or medium now known or later developed.

"Publicly accessible" areas of the Yahoo! Services are those areas of the Yahoo! network of properties that are intended by Yahoo! to be available to the general public. By way of example, publicly accessible areas of the Yahoo! Services would include Yahoo! Message Boards and portions of Yahoo! Groups and Flickr that are open to both members and visitors. However, publicly accessible areas of the Yahoo! Services would not include portions of Yahoo! Groups that are limited to members, Yahoo! services intended for private communication such as Yahoo! Mail or Yahoo! Messenger, or areas off of the Yahoo! network of properties such as portions of World Wide Web sites that are accessible via hypertext or other links but are not hosted or served by Yahoo!.

10.  CONTRIBUTIONS TO YAHOO!

By submitting ideas, suggestions, documents, and/or proposals ("Contributions") to Yahoo! through its suggestion or feedback webpages, you acknowledge and agree that: (a) your Contributions do not contain confidential or proprietary information; (b) Yahoo! is not under any obligation of confidentiality, express or implied, with respect to the Contributions; (c) Yahoo! shall be entitled to use or disclose (or choose not to use or disclose) such Contributions for any purpose, in any way, in any media worldwide; (d) Yahoo! may have something similar to the Contributions already under consideration or in development; (e) your Contributions automatically become the property of Yahoo! without any obligation of Yahoo! to you; and (f) you are not entitled to any compensation or reimbursement of any kind from Yahoo! under any circumstances.

11.  INDEMNITY

You agree to indemnify and hold Yahoo! and its subsidiaries, affiliates, officers, agents, employees, partners and licensors harmless from any claim or demand, including reasonable attorneys' fees, made by any third party due to or arising out of Content you submit, post, transmit, modify or otherwise make available through the Yahoo! Services, your use of the Yahoo! Services, your connection to the Yahoo! Services, your violation of the TOS, or your violation of any rights of another.

12.  NO COMMERCIAL REUSE OF YAHOO! SERVICES

You agree not to reproduce, duplicate, copy, sell, trade, resell or exploit for any commercial purposes, any portion or use of, or access to, the Yahoo! Services (including Content, advertisements, Software and your Yahoo! ID).

13.  GENERAL PRACTICES REGARDING USE AND STORAGE

You acknowledge that Yahoo! may establish general practices and limits concerning use of the Yahoo! Services, including without limitation the maximum number of days that email messages, message board postings or other uploaded Content will be retained by the Yahoo! Services, the maximum number of email messages that may be sent from or received by an account on the Yahoo! Services, the maximum size of any email message that may be sent from or received by an account on the Yahoo! Services, the maximum disk space that will be allotted on Yahoo!'s servers on your behalf, and the maximum number of times (and the maximum duration for which) you may access the Yahoo! Services in a given period of time. You agree that Yahoo! has no responsibility or liability for the deletion or failure to store any messages and other communications or other Content maintained or transmitted by the Yahoo! Services. You acknowledge that Yahoo! reserves the right to log off accounts that are inactive for an extended period of time. You further acknowledge that Yahoo! reserves the right to modify these general practices and limits from time to time.

Case5:10-cv-05897-JF   Document48   Filed04/08/11   Page54 of 58

Yahoo! Terms of Service                                                    Page 6 of 10

Yahoo! Messenger, including any web-based versions, will allow you and the people with whom you communicate to save your conversations in your Yahoo! accounts located on Yahoo! servers. This means you can access and search your message history from any computer with access to the internet. Whether or not you use this feature, other users may choose to use it to save conversations with you in their account on Yahoo! too. Your agreement to this TOS constitutes your consent to allow Yahoo! to store these communications on its servers.

14.  MODIFICATIONS TO YAHOO! SERVICES

Yahoo! reserves the right at any time and from time to time to modify or discontinue, temporarily or permanently, the Yahoo! Services (or any part thereof) with or without notice. You agree that Yahoo! shall not be liable to you or to any third party for any modification, suspension or discontinuance of the Yahoo! Services (or any part thereof).

15.  TERMINATION

You may terminate your Yahoo! account, any associated email address and access to the Yahoo! Services by submitting such termination request to Yahoo!.

You agree that Yahoo! may, *without prior notice*, immediately terminate, limit your access to or suspend your Yahoo! account, any associated email address, and access to the Yahoo! Services. Cause for such termination, limitation of access or suspension shall include, but not be limited to, (a) breaches or violations of the TOS or other incorporated agreements or guidelines, (b)requests by law enforcement or other government agencies, (c) discontinuance or material modification to the Yahoo! Services (or any part thereof), (d) unexpected technical or security issues or problems, (e) extended periods of inactivity, (f) engagement by you in fraudulent or illegal activities, and/or (g) nonpayment of any fees owed by you in connection with the Yahoo! Services. Further, you agree that all terminations, limitations of access and suspensions for cause shall be made in Yahoo!'s sole discretion and that Yahoo! shall not be liable to you or any third party for any termination of your account, any associated email address, or access to the Yahoo! Services.

Termination of your Yahoo! account includes any or all of the following: (a) removal of access to all or part of the offerings within the Yahoo! Services, (b) deletion of your password and all related information, files and content associated with or inside your account (or any part thereof), and (c) barring of further use of all or part of the Yahoo! Services.

16.  DEALINGS WITH ADVERTISERS

Your correspondence or business dealings with, or participation in promotions of, advertisers found on or through the Yahoo! Services, including payment and delivery of related goods or services, and any other terms, conditions, warranties or representations associated with such dealings, are solely between you and such advertiser. You agree that Yahoo! shall not be responsible or liable for any loss or damage of any sort incurred as the result of any such dealings or as the result of the presence of such advertisers on the Yahoo! Services.

17.  LINKS

The Yahoo! Services may provide, or third parties may provide, links to other World Wide Web sites or resources. You acknowledge and agree that Yahoo! is not responsible for the availability of such external sites or resources, and does not endorse and is not responsible or liable for any Content, advertising, products or other materials on or available from such sites or resources. You further acknowledge and agree that Yahoo! shall not be responsible or liable, directly or indirectly, for any damage or loss caused or alleged to be caused by or in connection with use of or reliance on any such Content, goods or services available on or through any such site or resource.

18.  YAHOO!'S PROPRIETARY RIGHTS

You acknowledge and agree that the Yahoo! Services and any necessary software used in connection with the Yahoo! Services ("Software") contain proprietary and confidential information

Case5:10-cv-05897-JF   Document48   Filed04/08/11   Page55 of 58

Yahoo! Terms of Service                                      Page 7 of 10

that is protected by applicable intellectual property and other laws. You further acknowledge and agree that Content contained in advertisements or information presented to you through the Yahoo! Services or by advertisers is protected by copyrights, trademarks, service marks, patents or other proprietary rights and laws. Except as expressly permitted by applicable law or as authorized by Yahoo! or the applicable licensor (such as an advertiser), you agree not to modify, rent, lease, loan, sell, distribute, transmit, broadcast, publicly perform or create derivative works based on the Yahoo! Services, such Content or the Software, in whole or in part.

Yahoo! grants you a personal, non-transferable and non-exclusive right and license to use the object code of its Software on a single computer; provided that you do not (and do not allow any third party to) copy, modify, create a derivative work from, reverse engineer, reverse assemble or otherwise attempt to discover any source code, sell, assign, sublicense, grant a security interest in or otherwise transfer any right in the Software. You agree not to modify the Software in any manner or form, nor to use modified versions of the Software, including (without limitation) for the purpose of obtaining unauthorized access to the Yahoo! Services. You agree not to access the Yahoo! Services by any means other than through the interface that is provided by Yahoo! for use in accessing the Yahoo! Services.

19. DISCLAIMER OF WARRANTIES

YOU EXPRESSLY UNDERSTAND AND AGREE THAT:

a. YOUR USE OF THE YAHOO! SERVICES AND SOFTWARE ARE AT YOUR SOLE RISK. THE YAHOO! SERVICES AND SOFTWARE ARE PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS. YAHOO AND ITS SUBSIDIARIES, AFFILIATES, OFFICERS, EMPLOYEES, AGENTS, PARTNERS AND LICENSORS EXPRESSLY DISCLAIM ALL WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF TITLE, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT.

b. YAHOO! AND ITS SUBSIDIARIES, AFFILIATES, OFFICERS, EMPLOYEES, AGENTS, PARTNERS AND LICENSORS MAKE NO WARRANTY THAT (i) THE YAHOO! SERVICES OR SOFTWARE WILL MEET YOUR REQUIREMENTS; (ii) THE YAHOO! SERVICES OR SOFTWARE WILL BE UNINTERRUPTED, TIMELY, SECURE OR ERROR-FREE; (iii) THE RESULTS THAT MAY BE OBTAINED FROM THE USE OF THE YAHOO! SERVICES OR SOFTWARE WILL BE ACCURATE OR RELIABLE; (iv) THE QUALITY OF ANY PRODUCTS, SERVICES, INFORMATION OR OTHER MATERIAL PURCHASED OR OBTAINED BY YOU THROUGH THE YAHOO! SERVICES OR SOFTWARE WILL MEET YOUR EXPECTATIONS; AND (v) ANY ERRORS IN THE SOFTWARE WILL BE CORRECTED.

c. ANY MATERIAL DOWNLOADED OR OTHERWISE OBTAINED THROUGH THE USE OF THE YAHOO! SERVICES OR SOFTWARE IS ACCESSED AT YOUR OWN DISCRETION AND RISK, AND YOU WILL BE SOLELY RESPONSIBLE FOR AND HEREBY WAIVE ANY AND ALL CLAIMS AND CAUSES OF ACTION WITH RESPECT TO ANY DAMAGE TO YOUR COMPUTER SYSTEM, INTERNET ACCESS, DOWNLOAD OR DISPLAY DEVICE, OR LOSS OF DATA THAT RESULTS FROM THE DOWNLOAD OF ANY SUCH MATERIAL.

d. NO ADVICE OR INFORMATION, WHETHER ORAL OR WRITTEN, OBTAINED BY YOU FROM YAHOO! OR THROUGH OR FROM THE YAHOO! SERVICES OR SOFTWARE SHALL CREATE ANY WARRANTY NOT EXPRESSLY STATED IN THE TOS.

e. A SMALL PERCENTAGE OF USERS MAY EXPERIENCE EPILEPTIC SEIZURES WHEN EXPOSED TO CERTAIN LIGHT PATTERNS OR BACKGROUNDS ON A COMPUTER SCREEN OR WHILE USING THE YAHOO! SERVICE. CERTAIN CONDITIONS MAY INDUCE PREVIOUSLY UNDETECTED EPILEPTIC SYMPTOMS EVEN IN USERS WHO HAVE NO HISTORY OF PRIOR SEIZURES OR EPILEPSY. IF YOU, OR ANYONE IN YOUR FAMILY, HAVE AN EPILEPTIC CONDITION, CONSULT YOUR PHYSICIAN PRIOR TO USING THE YAHOO! SERVICE. IMMEDIATELY DISCONTINUE USE OF THE YAHOO! SERVICES AND CONSULT YOUR PHYSICIAN IF YOU EXPERIENCE ANY OF THE FOLLOWING SYMPTOMS WHILE USING THE YAHOO! SERVICE:

DIZZINESS, ALTERED VISION, EYE OR MUSCLE TWITCHES, LOSS OF AWARENESS, DISORIENTATION, ANY INVOLUNTARY MOVEMENT, OR CONVULSIONS.

20.  LIMITATION OF LIABILITY

YOU EXPRESSLY UNDERSTAND AND AGREE THAT YAHOO! AND ITS SUBSIDIARIES, AFFILIATES, OFFICERS, EMPLOYEES, AGENTS, PARTNERS AND LICENSORS SHALL NOT BE LIABLE TO YOU FOR ANY PUNITIVE, INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR EXEMPLARY DAMAGES, INCLUDING, BUT NOT LIMITED TO, DAMAGES FOR LOSS OF PROFITS, GOODWILL, USE, DATA OR OTHER INTANGIBLE LOSSES (EVEN IF YAHOO! HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES), RESULTING FROM: (a) THE USE OR THE INABILITY TO USE THE YAHOO! SERVICE; (b) THE COST OF PROCUREMENT OF SUBSTITUTE GOODS AND SERVICES; (c) UNAUTHORIZED ACCESS TO OR ALTERATION OF YOUR TRANSMISSIONS OR DATA; (d) STATEMENTS OR CONDUCT OF ANY THIRD PARTY ON THE YAHOO! SERVICE; OR (e) ANY OTHER MATTER RELATING TO THE YAHOO! SERVICE.

21.  EXCLUSIONS AND LIMITATIONS

SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF CERTAIN WARRANTIES OR THE LIMITATION OR EXCLUSION OF LIABILITY FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES. ACCORDINGLY, SOME OF THE ABOVE LIMITATIONS OF SECTIONS 19 AND 20 MAY NOT APPLY TO YOU.

22.  SPECIAL ADMONITION FOR YAHOO! SERVICES RELATING TO FINANCIAL MATTERS

If you intend to create or join any service, receive or request any news, messages, alerts or other information from the Yahoo! Services concerning companies, stock quotes, investments or securities, please read the above Sections 19 and 20 again. They go doubly for you. In addition, for this type of information particularly, the phrase "Let the investor beware" is apt. The Yahoo! Services is provided for informational purposes only, and no Content included in the Yahoo! Services is intended for trading or investing purposes. Yahoo! and its licensors shall not be responsible or liable for the accuracy, usefulness or availability of any information transmitted or made available via the Yahoo! Services, and shall not be responsible or liable for any trading or investment decisions based on such information.

23.  NO THIRD-PARTY BENEFICIARIES

You agree that, except as otherwise expressly provided in this TOS, there shall be no third-party beneficiaries to this agreement

24.  NOTICE

Yahoo! may provide you with notices, including those regarding changes to the TOS, including by but not limited to email, regular mail, SMS, MMS, text message, postings on the Yahoo! Services, or other reasonable means now known or hereafter developed. Such notices may not be received if you violate this TOS by accessing the Yahoo! Services in an unauthorized manner. Your agreement to this TOS constitutes your agreement that you are deemed to have received any and all notices that would have been delivered had you accessed the Yahoo! Services in an authorized manner.

25.  TRADEMARK INFORMATION

You agree that all of Yahoo!'s trademarks, trade names, service marks and other Yahoo! logos and brand features, and product and service names are trademarks and the property of Yahoo! Inc. (the "Yahoo! Marks"). Without Yahoo!'s prior permission, you agree not to display or use in any manner the Yahoo! Marks.

26.  NOTICE AND PROCEDURE FOR MAKING CLAIMS OF COPYRIGHT OR INTELLECTUAL PROPERTY INFRINGEMENT

Yahoo! respects the intellectual property of others, and we ask our users to do the same. Yahoo! may, in appropriate circumstances and at its discretion, disable and/or terminate the accounts of users who may be repeat infringers. If you believe that your work has been copied in a way that constitutes copyright infringement, or your intellectual property rights have been otherwise violated, please provide Yahoo!'s Copyright Agent the following information:

    a.   an electronic or physical signature of the person authorized to act on behalf of the owner of the copyright or other intellectual property interest;

    b.   a description of the copyrighted work or other intellectual property that you claim has been infringed;

    c.   a description of where the material that you claim is infringing is located on the site;

    d.   your address, telephone number, and email address;

    e.   a statement by you that you have a good faith belief that the disputed use is not authorized by the copyright owner, its agent, or the law;

    f.   a statement by you, made under penalty of perjury, that the above information in your notice is accurate and that you are the copyright or intellectual property owner or authorized to act on the copyright or intellectual property owner's behalf.

Yahoo!'s Agent for Notice of claims of copyright or other intellectual property infringement can be reached as follows:

By mail:
Copyright Agent
c/o Yahoo! Inc.
701 First Avenue
Sunnyvale, CA 94089
By phone: (408) 349-5080
By fax: (408) 349-7821
By email: copyright@yahoo-inc.com

27.  GENERAL INFORMATION

*Entire Agreement.* The TOS constitutes the entire agreement between you and Yahoo! and governs your use of the Yahoo! Services, superseding any prior version of this TOS between you and Yahoo! with respect to the Yahoo! Services. You also may be subject to additional terms and conditions that may apply when you use or purchase certain other Yahoo! services, affiliate services, third-party content or third-party software.

*Choice of Law and Forum.* You and Yahoo! each agree that the TOS and the relationship between the parties shall be governed by the laws of the State of California without regard to its conflict of law provisions and that any and all claims, causes of action or disputes (regardless of theory) arising out of or relating to the TOS, or the relationship between you and Yahoo!, shall be brought exclusively in the courts located in the county of Santa Clara, California or the U.S. District Court for the Northern District of California. You and Yahoo! agree to submit to the personal jurisdiction of the courts located within the county of Santa Clara, California or the Northern District of California, and agree to waive any and all objections to the exercise of jurisdiction over the parties by such courts and to venue in such courts.

*Waiver and Severability of Terms.* The failure of Yahoo! to exercise or enforce any right or provision of the TOS shall not constitute a waiver of such right or provision. If any provision of the TOS is found by a court of competent jurisdiction to be invalid, the parties nevertheless agree that the court should endeavor to give effect to the parties' intentions as reflected in the provision, and the other provisions of the TOS remain in full force and effect.

*No Right of Survivorship and Non-Transferability.* You agree that your Yahoo! account is non-

Case5:10-cv-05897-JF   Document48   Filed04/08/11   Page58 of 58

Yahoo! Terms of Service                                                          Page 10 of 10

transferable and any rights to your Yahoo! ID or contents within your account terminate upon your death. Upon receipt of a copy of a death certificate, your account may be terminated and all contents therein permanently deleted.

*Statute of Limitations*. You agree that regardless of any statute or law to the contrary, any claim or cause of action arising out of or related to use of the Yahoo! Services or the TOS must be filed within one (1) year after such claim or cause of action arose or be forever barred.

The section titles in the TOS are for convenience only and have no legal or contractual effect.

28.  VIOLATIONS

Please report any violations of the TOS to our Customer Care group.

Last updated November 24, 2008

Copyright © 2010 Yahoo! Inc. All Rights Reserved

Privacy | Legal