** E-Filed 5/18/2011**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| FAYELYNN SAMS, Individually, and on behalf of a class of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>YAHOO!, INC.,<br><br>     Defendant . | Case Number CV-10-5897-JF(HRL)<br><br>ORDER[1] GRANTING MOTION TO DISMISS<br><br>[Re: Docket No. 28] |

Defendant Yahoo! Inc. ("Yahoo!") moves to dismiss the first amended complaint ("FAC") of Plaintiff Fayelynn Sams, ("Sams"), pursuant to Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim upon which relief may be granted.  The FAC asserts the following claims: (1) violation of 18 U.S.C. §§ 2510, *et seq.* ("Electronic Communications Privacy Act"); (2) violation of 18 U.S.C. §§ 2701, *et seq.* ("Stored Communications Act"); (3) violation of Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"); (4) violation of Cal. Bus. & Prof. Code § 17500, *et seq.*; (5) public disclosure of private facts; (6) breach of contract; and (7) breach of the duty of good faith

---

[1]  This disposition is not designated for publication in the official reports.

1    and fair dealing.[2]  For the reasons discussed below, the motion will be granted, with leave to
2    amend.

3                           **I.  PROCEDURAL HISTORY**

4            Sams originally filed her class action complaint in the Superior Court of Fulton County,
5    Georgia.  (Mot. to Dismiss, 2:2-3.)  Yahoo! removed the action to the United States District
6    Court for the Northern District of Georgia, where it moved to dismiss the complaint for failure to
7    state a claim upon which relief may be granted.  (*Id*. at 2: 5-7.)  On November 26, 2010, Sams
8    voluntarily filed the FAC and concurrently filed a motion to transfer the action to this Court.  (*Id*.
9    at 2:9-13.)  Yahoo! agreed "that transfer to the Northern District of California was the
10   appropriate remedy in light of Yahoo!'s terms of service."  (*Id*. at 2:13-16 (citing Dkt. No. 17).)
11   The parties agreed to stay all deadlines in the action until the court entered a ruling on the
12   motion to transfer.  (*Id*. at 2: 17-18; *see also* Pl.'s Opp., 17-19.)  An order of transfer was filed on
13   December 20, 2010, (*id*. at 2:21-24.), and the case was re-filed in this Court on December 27,
14   2010.  Yahoo! filed its amended motion to dismiss on January 10, 2011.  The parties disagree as
15   to whether the motion was timely filed.[3]

16                           **II.  BACKGROUND**

17           Sams alleges that Yahoo! voluntarily disclosed "certain personal and private user
18   information and data" in violation of federal and state law.  (Pl.'s Opp., 1:8-10 (citing FAC ¶1).)
19   Sams is a resident of Georgia and is a registered Yahoo! user.  (FAC ¶ 5.)  Yahoo! is an Internet
20   Service Provider ("ISP") and global internet company that provides a number of services, many
21   of which are offered free of charge.  (*Id*. at ¶ 9.)  Yahoo! has more than 500 million users
22   worldwide and currently is one of the most visited Internet sites.  (*Id*.)

23           Sams claims that Yahoo!, in response to two separate invalid subpoenas, improperly

24   _____

25           [2]In the event that her request for a default judgment is not granted, Sams has agreed to
26   dismiss claims three, four, six and seven.  (*See* Pl.'s Opp., fn 1.)

27           [3]Sams contends that Yahoo!'s motion to dismiss was due no later than January 3, 2011,
     and that Yahoo!'s current motion is untimely.  Sams argues that because Yahoo! failed to
28   respond timely to the FAC she is entitled to default judgment.

                                    2

disclosed her personal and private user information to law enforcement and other government

entities in violation of the provisions of the Stored Communications Act.  (*Id*. at ¶ 5.)  She

alleges that on two occassions Yahoo!'s legal compliance team in Sunnyvale, California,

received via facsimile a fax cover page;  a subpoena for the production of evidence signed by the

Clerk of the Superior Court of Lowndes County, Georgia; and a letter signed by Bradfield

Shealy, Chief Assistant District Attorney for the Southern Judicial District, that explained

Yahoo!'s obligations under the subpoena.  (Mot. to Dismiss, 3:12-4:2; *see also* Granick Decl.,

Ex.'s 2 & 3).  The first subpoena, dated December 2, 2008, requested "[a]ny and all records

regarding the identification of a user with the Yahoo! ID "lynnsams" or "lynnsams@yahoo.com"

to include name and address, date account created, account status, Yahoo! E-mail [sic] address,

alternate e-mail address, registration from IP, date IP registered and login IP addresses

associated with session time and dates" in November 2008.  (Granick Decl., Ex. 2 (emphasis in

original); *see also* Mot. to Dismiss, 4:2-6).  The second subpoena, dated December 15, 2008,

requested "[a]ny and all I.P. login tracker for "lynnsams" or "lynnsams@yahoo.com" for dates in

December 2008.   (Granick Decl., Ex. 3 (emphasis in original); *see also* Mot. to Dismiss, 4:6-8).

Both subpoenas contained language that specifically instructed Yahoo! not to inform Sams.  (*See*

Granick Decl., Ex.'s 2 & 3; Mot. to Dismiss, 4-10).

Sams claims that Yahoo! "voluntarily produced the requested records, notwithstanding

its actual knowledge that the subpoena[s] w[ere] invalid and unenforceable, because it was more

convenient to Yahoo! to voluntarily produce the requested records."  (FAC ¶ 34.)   Sams alleges

that Yahoo!'s voluntary disclosure of information included some or all of the following: "name,

address, phone number, birth date, gender, social security number, date account created, account

status, Yahoo! email address, alternate email address, the content of email communications,

contact lists, photos, files, website posts, registration from Internet Protocol (IP), date IP

registered [sic], login IP addresses, and other IP address information."  (FAC ¶2.)  Sams claims

that Yahoo!'s action violated federal and state law as well as its own terms of service and

privacy policy "concerning the collection, protection, use and disclosure by Yahoo! of Yahoo!

users' personal and private user information and data."  (Pl.'s Opp., 2:11-13 (citing FAC ¶ 11).)

3

### III.  MOTION TO DISMISS

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Center*, 521 F.3d 1097, 1104 (9th Cir. 2008).  For purposes of a motion to dismiss, "all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996).  However, "[w]hile a complaint attacked by Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) (internal citations omitted).  Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995).

### IV.  DISCUSSION

Yahoo! argues that because the Stored Communications Act provides ISP's with immunity from claims based upon their compliance with the terms of a grand jury subpoena, all of Sams's claims are precluded as a matter of law.  (Mot. to Dismiss, 6:8-21.)  Sams contends in her opposition papers that Yahoo! is not entitled to immunity because it failed to comply with the requirements of the statute.  As noted above, Sams also claims that Yahoo!'s motion to dismiss was untimely filed, and she opposes Yahoo!'s request for judicial notice of its terms of service and privacy policy.  (*See* Pl.'s Opp, 7:23-10:2.)

#### A.  Whether the Court May Consider Yahoo!'s Motion

Sams claims that Yahoo!'s motion was filed seven days late.  However, even if the motion were untimely, which is far from clear, it would be within the Court's discretion to deny Sams's request for entry of default.  *See Kipkirwa v. Santa Clara County Probation Dept.*, 2 Fed. Appx. 868, 870 (9th Cir. 2001).  As a general rule, "[d]efault judgments are generally disfavored [and] '[c]ases should be decided upon their merits whenever reasonably possible.'" *Id.* (citing *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986)).  Consistent with that general rule, "a

4

court may consider numerous factors in deciding whether to exercise its discretion to enter a default, including the merits of plaintiff's substantive claim, the possibility of disputed material facts, whether defendant's default was due to excusable neglect, and the strong policy favoring decisions on the merits." *Id.* Applying these factors here, this Court concludes that Sams's request for default judgment is unwarranted and that it is appropriate to consider Yahoo!'s motion to dismiss on its merits.

### B. Whether the Court may take Judicial Notice of Yahoo!'s Terms of Service and Privacy Policy

Sams contends that Yahoo! improperly refers to "matters that are outside the pleadings in violation of Fed. R. Civ. P. 12(d)." (Pl.'s Opp., 7:23-24.) She also argues that Yahoo!'s evidence of its terms of service and privacy policy (collectively "terms of service") is unauthenticated and thus inadmissible. (*Id.* at 8:4-23.) Sams is correct that courts ordinarily "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citing *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002)); *see also MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). However, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. Pro. 10(c). Here, Sams herself has attached a copy of the terms of service to her FAC. (*See* FAC, Ex. A.) Accordingly, the document is considered "part of the pleading for all purposes." *See Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 155 n. 19 (9th Cir. 1990) (citing *Amfac Mtg. Corp. v. Arizona Mall of Tempe*, 583 F.2d 426 (9th Cir. 1978)).

### C. Whether Yahoo! Has Statutory Immunity for Sams's Claims

The Stored Communications Act contains two separate immunity provisions: 18 U.S.C. § 2703(e) and 18 U.S.C. § 2707(e). Yahoo! contends that 18 U.S.C § 2703(e) provides it with complete immunity. (Mot to Dismiss, 6:8-19.) Alternatively, it argues that even if 18 U.S.C. § 2703(e) somehow does not apply, it is still entitled to immunity under 18 U.S.C.§ 2707(e) because any disclosure it made was in good faith. Sams attacks Yahoo!'s characterization of

Case No. CV-10-5897
ORDER GRANTING MOTION TO DISMISS
(JFEX2)

both sections as "immunity" provisions, arguing that at most they can serve as the basis of "fact-based affirmative defenses" that Yahoo! has the burden of proving. (*Id.* at 13:4-12.)  Second, she argues that the "subpoena is facially invalid in all respects," and as a result any disclosure by Yahoo! necessarily was "voluntary" and thus outside the scope of immunity.  (*Id*. at 12:23-24.) Third, she argues that Yahoo! "did not act in accordance with the terms of the grand jury subpoena" and thus cannot rely on the defense.  Finally, she contends that Yahoo! inappropriately disclosed "content" and that "the absence of notice renders the subpoena invalid, as the subpoena did not meet the requirements of 18 U.S.C. § 2703(b)(1)(B)(ii)."   (*Id*. at 12:21-23.)

### 1.   Whether the Court May Consider Affirmative Defenses on a Motion to Dismiss

To the extent that Sams argues that affirmative defenses necessarily involve fact-based inquiries and thus are inappropriate for consideration on a motion to dismiss, both this Court and others have held to the contrary.  *See Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1200 n.5 (N.D. Cal. 2009)).  The assertion of an affirmative defense properly may be considered on a motion to dismiss where the defense is "apparent from the face of the [c]omplaint." *Goddard v. Google, Inc.*, 640 F.Supp.2d 1193, 1200 n.5 (N.D. Cal. 2009) (internal citation omitted); *see also Langdon v. Google, Inc.*, 474 F.Supp2d 622, 630-31 (D.Del 2007) (granting Rule 12(b)(6) motion to dismiss based on application of CDA immunity); *Jones v. Block*, 549 U.S. 199, 215 (2007) (finding "[w]hether a particular ground for opposing a claim may be the basis for dismissal for [a 12(b)(6) motion] depends on whether the allegations in the complaint suffice to establish that ground . . . .").  Sams's pleading itself raises questions as to whether Yahoo! responded to an invalid subpoena, whether it impermissibly disclosed "content" based information, and whether it complied fully with the terms of the subpoena.  *Id*.

### 2.   Whether Yahoo! Is Entitled to Immunity Pursuant to 18 U.S.C. § 2703(e)

Pursuant to 18 U.S.C. § 2703(e), "[n]o cause of action shall lie in any court against any provider of wire or electronic communication service, its officers, employees, agents, or other specified persons for providing information, facilities, or assistance in accordance with a court

6

order, warrant, *subpoena*, statutory authorization, or certification under this chapter." 18 U.S.C

§ 2703(e) (emphasis added). Yahoo! is entitled to immunity under this section if (1) it is a

"provider," and (2) it has provided "information, facilities, or assistance *in accordance* with a

court order, warrant, *subpoena*, statutory authorization, or certification under this chapter."

Sams concedes that Yahoo! is a "provider," but she disputes emphatically whether the second

condition has been met here.

### a. Whether the subpoenas were invalid on their face

Sams contends that the subpoenas were invalid on their face because they were not issued

in compliance with the Uniform Act to Secure the Attendance of Witnesses from Without a State

in Criminal Proceedings ("Uniform Act"). She alleges that the subpoenas "were issued in

Georgia and sought to compel a California witness to appear, testify, and produce documents in

Georgia." (Pl.'s Opp., 15:21-25.) The purpose of the Uniform Act is to ensure reciprocity

between the various prosecuting authorities in order to compel out-of-state witnesses to testify.

*See* Cal. Pen. Code § 1334.2. Nearly every state has adopted some version of the Act, and

California adopted its version in 1937. (*See* Pl.'s Opp., 16:4-7 (citing *People v. Cogswell*, 48

Cal. 4th 467, 474-75 (2010)).)[4] California's statute provides that " a person shall be required to

appear at a hearing upon receipt of a certificate of a court of another state, which has similar

legislation, asserting that the person is a material witness in a criminal prosecution or grand jury

investigation." Cal. Pen. Code § 1334.2. If the judge determines that the witness "is material

and necessary . . . he or she shall issue a subpoena, with a copy of the certificate attached,

directing the witness to attend and testify in the court where the prosecution is pending, or where

the grand jury investigation is, at a time and place specified in the subpoena." *Id.*

Sams asserts that non-party witnesses in California may not be compelled to appear or

produce documents by out-of-state subpoenas. (Pl.'s Opp., 17: 8-11 (citing *People v.

Cavanaugh*, 69 Cal.2d 262, 265-66 (1968); *Amoco Chemical Co. v. Certain Underwriters at

Lloyd's of London*, 34 Cal. App. 4th 554, 559 (1995)).) She argues that accordingly, the

---

[4]Georgia's version of the Uniform Act is codified in Ga. Code. Ann. § 24-10-94(a).

7

1    subpoenas at issue here did not comply with the Uniform Act and thus Yahoo! was not legally

2    compelled to appear and produce documents.[5] Sams contends the subpoenas thus were "invalid

3    on their face and any disclosure by [Yahoo!] allegedly in response thereto was not compulsory,

4    but simply voluntary and violative of the SCA." (*Id.* at 17:14-16.)

5         Yahoo! responds that Sams's argument depends upon the mistaken assumption that the

6    subpoenas at issue sought to compel testimony and product by a California witness. (Def.'s

7    Reply, 8:8-10 (emphasis added).) While it is undisputed that the subpoenas were faxed to

8    Yahoo!'s compliance team in Sunnyvale, California, the subpoenas in relevant part state only

9    that "*[y]ou are required to be and appear*," (Granick Decl. Ex.'s 2 & 3) (emphasis added). While

10   the subpoenas certainly could be read as requiring action on the part of Yahoo!'s California-

11   based compliance team, the language also could be read to refer generally to Yahoo! as a

12   singular corporate entity.

13        Yahoo! argues that because it has and at all relevant times had an office in Georgia,

14   (Def.'s Reply, 9:4-5.), it had no reason to believe that it would not be subject to personal

15   jurisdiction in Georgia or to believe that the technical requirements of Uniform Act had any

16   relevance to its obligation to comply with the subpoenas. (*Id.* at 9:5-10:6.) Yahoo! represents

17   that it has a policy to "no longer contest[] jurisdiction for states in which it has offices and

18   employees," as it "has previously litigated and lost similar jurisdiction issues in the past."

19   (Def.'s Reply, 9:13-15.) Yahoo! points out that in *Tamburo v. Dworkin*, No. 04-C-3317 (N.D.

20   Illinois Mar. 23, 2007), it attempted unsuccessfully to resist producing documents that had been

21   subpoenaed by out-of-state authorities. It argued in that case that it was not subject to personal

22   jurisdiction or compelled to accept a subpoena issued in the Northern District of Illinois because

23   "all of the responsive documents were located in California and no compliance personnel

24   qualified to obtain user data worked in Chicago." (Def.'s Reply, 9:15-19 (citing Granick Decl.,

25   Ex. 1, Order in *Tamburo v. Dworkin*).) The court found that Yahoo!'s regional locations and

26

27       [5]Sams also points out that neither Georgia or California permit "free-standing interstate"
     subpoenas *duces tecum*. (Pl.'s Opp., 18:18-19:3 (citing *Davenport v. State*, 303 Ga. App. 401,
28   402 (2010); *Amoco Chemical Co.*, 34 Cal. App. 4th 554, 559-60 (1995)).)

1    corporate headquarters "are not separate and distinct entities." (Granick Decl., Ex. 1 p.2.)  It

2    concluded that "[b]ecause Yahoo!'s [regional] office is part of the same entity as Yahoo!'s

3    corporate headquarters, the subpoenaed documents are within Yahoo!'s control for purposes of

4    Rule 34 and 45." (*Id*. at p. 3.)  The court found it irrelevant whether the employee's particular

5    regional officers had "the ability to access the subpoenaed information. . . ." (*Id*.)

6        It is apparent that Yahoo! is subject to personal jurisdiction in Georgia and that it could

7    not resist compulsory disclosure by arguing that its regional office had no control over the

8    subpoened documents.  As the court held in *Dworkin,* Yahoo! is "one entity," and the location of

9    the documents or duties of employees at particular regional offices is irrelevant to its obligation

10   to produce documents sought by subpoena.  Accordingly, this Court concludes that the

11   subpoenas at issue here were not subject to the Uniform Act and thus were not invalid on their

12   face.

13           **b.  Whether Yahoo! complied properly with the terms of the subpoena**

14       Sams argues alternatively that Yahoo! did not comply with the terms of the subpoena

15   because a Yahoo! agent did not "appear and produce evidence directly to the Grand Jury as

16   commanded by the subpoena." (Pl.'s Opp., 15:5-9.)  Both subpoenas issued to Yahoo!'s legal

17   compliance team stated that "[y]ou are hereby required to be and appear at the September 2008

18   Term of the Lowndes Country Grand Jury . . . at 8:30 a.m. on the 28th day of January, 2009."

19   (*See* Granick Decl. Ex.'s 2 & 3.)  Sams notes that the letter transmitted with the subpoena

20   advised that Yahoo! "may wish to voluntarily provide copies of the evidence," and should

21   Yahoo! elect to provide the evidence in advance that such action "should expedite your

22   appearance before the Grand Jury and may make it possible for us to put you on call." (*Id*.)

23   Sams interprets this language as suggesting that advance production of the records "might

24   obviate the need to respond to the subpoena."  (FAC ¶ 30.)

25       Yahoo! appropriately elected to produce the documents before the deadline in order to

26   reduce the likelihood that is representatives would need to appear in person before the grand

27   jury.  Sams does not cite any authority holding that a person or entity responding to a subpoena

28   must hand-deliver the documents as specified exactly in the subpoena; the fact that the

9

prosecutor in charge subsequently determined that Yahoo!'s appearance was unnecessary does not support a *post hoc* finding that Yahoo! failed to comply with the terms of the subpoena.

### c. Whether Yahoo!'s disclosure improperly included "content-based" information

Sams observes correctly that § 2703(e) "only provides a defense for the disclosure of content if the user was given advanced notice under 18 U.S.C. § 2703(b)(1)(B)(i), or, if without notice, for disclosure of directory information under 18 U.S.C. § 2703(c)(2)." (*Id.* at 13:24-14:2.) It is undisputed that neither the government nor Yahoo! provided Sams with notice; indeed, Yahoo! was expressly prohibited from "revealing the existence of [the] subpoena." (*See* Granick Decl. Ex.'s 2 & 3.) Yahoo! contends that it did not disclose "content," but Sams asserts that this contention is unsupported and "contrary to the facts alleged in the Amended Complaint." (Pl.'s Opp., 15:14-17 (citing FAC ¶¶ 49, 54, 56, 58, 85,89, and 94.)

The subpoenas required production of "any and all records regarding the identification of a user with the Yahoo! ID "lynnsams" or "lynnsams@yahoo.com". . . includ[ing] name and address, date account created, account status, Yahoo! E-mail [sic] address, alternative e-mail address, registration from IP, date IP registered and login IP addresses associated with session time and dates [in November 2008]" and "I.P. login tracker . . . for dates [in December 2008]." (*See* Granick Decl. Ex.'s 2 & 3.) "Content" is defined "when used with respect to any wire, oral, or electronic communication," as "any information concerning the substance, purport, or meaning of that communication."   18 U.S.C. § 2510(8).  Sams claims that this "definition includes all aspects of the communication itself.  No aspect, including the identity of the parties, the substance of the communication between, or the fact of the communication itself, is excluded. The privacy of the communication to be protected is intended to be comprehensive." (FAC ¶ 49.)

As Yahoo! points out, much of this language was edited out of §2510(8) in 1986 when Congress passed the Electronic Communications Protection Act.  (*See* Def.'s Reply, 11:15-12:2 (citing Pub. L. 99-509, Oct. 21 1986, 100 Stat. 1848, § 101(a)(5) (striking out "identity of the parties to such communication or the existence" from 18 U.S.C. § 2510(8))).)  The Ninth Circuit

1   has determined that access to information such as "e-mail to/from addresses and IP addresses

2   constitute addressing information" and that such "addressing information" does not permit the

3   government to "find out the contents of [] messages or know the particular pages on the websites

4   the person viewed." *See United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008).

5   Moreover, 18 U.S.C. § 2703(c)(2) permits providers to disclose user identification information,

6   "records of session times and durations," "temporarily assigned network addresses," and "means

7   of payment (including any credit card or bank account number)." 18 U.S.C. § 2703(c)(2). All

8   this information may be provided without notice to the user, while notice is required for other

9   provisions under the chapter that specifically relate to disclosure of "content." *See* 18 U.S.C. §

10  2703(a) & (b). Logically, the fact that no notice is required to obtain disclosures under §2703(c)

11  suggests that the information subject to that provision is not content-based.

12          Sams alleges conclusorily that Yahoo! routinely discloses some or all of the following

13  user information: "name, address, phone number, birth date, gender, social security number, date

14  account created, account status, Yahoo! email address, alternate email address, the *content* of

15  email communications, contact lists, photos, files, website posts, registration from Internet

16  Protocol (IP), date IP registered [sic], login IP addresses, and other IP address information."

17  (*See e.g.,* ¶¶ 2, 53-58, 83-94) (emphasis added.) However, Sams alleges no actual facts tending

18  to show that Yahoo! disclosed any information other than the non-content-based information

19  sought by the subpoenas at issue here. While the Court must "take all factual allegations in the

20  complaint as true," (*Ashcroft v. Iqbal*, 129 S.Ct.1937, 1949 (2009)), it is not required to accept a

21  "legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

22  555 (2007). Here, Sams's allegations are both conclusory and devoid of factual support.

23          **D. Conclusion**

24          Pursuant to the foregoing discussion and based on the facts alleged, Yahoo! appears to

25  have complied with the terms of both subpoenas and thus is entitled to immunity pursuant to 10

26  U.S.C. §2703(e). However, because the Court cannot say with certainty that Sams could not

27  allege facts tending to show that Yahoo! impermissibly disclosed content-based information,

28  leave to amend will be granted.

11

1

**IV.  ORDER**

2          Good cause therefor appearing, the motion to dismiss is GRANTED, WITH LEAVE TO

3   AMEND.  Any amended complaint shall be filed within (30) days of the date of this order.

4

5   IT IS SO ORDERED

6

7   DATED:  May 16, 2011                    _____
                                            JEREMY FOGEL
8                                           United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. CV-10-5897
ORDER GRANTING MOTION TO DISMISS
(JFEX2)